## CAMPBELL *v.* COOPER.

To maintain an action for enticing away a servant, there must be proof of a service owing to the plaintiff, by virtue of an agreement on the part of the servant himself, or some other person having authority to bind him to the service.

An agreement by the father, for the services of his minor child, ceases to be binding upon the minor at the death of the father, unless made by indentures of apprenticeship in conformity with the provisions of the statute; and a parol gift of the child by the father gives no right to the services of the child after the death of the father.

The assent by the infant to a contract made by the father for services to be rendered by the infant for a time, within which the father dies, may be evidence of the infant's agreement to render the service for so much of the time as had not expired at the father's death, and such agreement gives the right to the service until it is avoided by the infant.

The act of the infant in leaving the service in violation of the agreement, and under circumstances indicative of an intention to avoid it, constitutes an avoidance, and the master has no right to the service under such agreement from that time.

No action lies against a third person for holding out inducements to an infant, rendering service under such agreements, to avoid it by leaving the service.

THIS is an action on the case, alleging that the defendant enticed away from the plaintiff's service, Mary Cooper and John B. Cooper, servants of the plaintiff, and received and harbored them.

It appeared that said Mary and John were children of a brother of the defendant; that their father, Charles A. Cooper,

died in May, 1849, and their mother about a year after ; that their parents were very poor and unable to support themselves, and were resident in Alstead ; that Mary was born December 6, 1839, and John February 14, 1841. The plaintiff offered evidence tending to show that not long before the death of the father, he, with the assent of his wife, gave Mary to the plaintiff, who took her to his home in Acworth, where she remained till July 16, 1855. The plaintiff offered in evidence an instrument executed by Charles A. Cooper, the father of the minors, with the assent upon it in writing of said John, then about nine years of age, of the one part, and one Oliver Shepard on the other part, purporting to bind said John as an apprentice to said Shepard till the age of twenty-one.

The instrument was not in two parts, and was kept by said Shepard.

The plaintiff also offered a contract dated March 30, 1854, between said Shepard and the plaintiff, by which Shepard undertook to place said John with the plaintiff, to remain till twenty-one, upon terms similar to those contained in the instrument executed by Cooper and Shepard. Said John, who was then under fourteen years of age, gave his written assent to this arrangement, and went to the plaintiff's and remained till July 16, 1855.

The plaintiff is a farmer, and the two minors worked, the boy on the farm and the girl in the house, about his business.

In July, 1855, the defendant, who had recently returned from California, saw the children, and stated to them that he had heard from the neighbors that they were not properly treated, promised them a better position in life, and induced them to leave the plaintiff without any notice of their intention to do so, and they went with him, without compulsion, to his house, where the boy still remains, the girl having returned to the plaintiff's after about two weeks' absence.

At the close of the plaintiff's evidence the court ruled that there was no competent evidence to prove the said Mary or John to be the servant of the plaintiff, within the intent of the allega-

Campbell *v.* Cooper.

tion in the declaration, and directed that a nonsuit be entered, to which ruling the plaintiff excepted.

*Burke,* for the plaintiff.

In this case the defendant, although a relative of the servants, for enticing away whom this action is brought, stands in the same relation to them as that in which a stranger would stand. He has no legal control over them nor any right to their services. Therefore, if the plaintiff's title to the services of the minor children would be good against a stranger, it will be good against the defendant.

The only questions, therefore, which arise in this case, are— 1. Whether an action can be maintained for enticing away the servant of another? and if so, 2. Whether the relation of master and servant existed between the plaintiff and the persons alleged in the declaration to have been enticed away by the defendant.

1. An action may be maintained by the master against him who entices away his servant, or detains him in service, knowing him to be the servant of another, on the ground of the interest which he has in the labor of the servant. *Hoit* v. *Aldridge,* Cowp. 64.

And trespass on the case lies by a. master for seducing away his journeyman, although hired by the piece, and not for any certain term. Anon. Lofft. 493, and the case last cited ; see also 3 Stephens' Nisi Prius 2357–8. The right to maintain an action for seducing away a servant is recognized in this country. *Boston Glass Manuf. Co.* v. *Binney,* 4 Pick. 425. And an action will lie for enticing away an apprentice. *Barber* v. *Dennis,* 6 Mod. 69 ; *Same Case,* 1 Salk. 68. It also lies for enticing away a child, not bound to service, for the plaintiff may have an interest in the possession of the child, independent of his services, which our law will protect.

If a man takes an infant, or other, out of another's possession, he shall be punished, although the infant, or other, was not retained ; and although the infant was but ten years of age, at which age an action lies not against the infant upon the statute. 15 Viner's Abridg., Title, Master and Servant, (o.)

2. The relation of master and servant *de facto*, unquestionably exists in this case, and that relation, even thus qualified, is sufficient to entitle the plaintiff to maintain his action against the defendant.

An apprenticeship *de facto* will always suffice against a wrong doer, though there were no legal apprenticeship. *Barber* v. *Dennis*, above cited. Nor can the defendant avail himself of any objection to the indenture of apprenticeship, or contract of hiring. *Keane* v. *Boycalt*, 2 H. Black. 511.

The last case cited is analogous in its facts to the one now under consideration, and precisely in point.

The relation of master and servant, until dissolved by the quarter sessions, cannot be questioned in a suit by a master for harboring his apprentice, under the statute of Pennsylvania of 1770. *Bonnel* v. *Brabsmon*, 3 Watts & Serg. 178. Thus it appears that the law places the right of the plaintiff to recover, in cases in which the relation of master and servant exists *de facto*, upon the same ground as in actions by the tenant in possession against a mere wrong doer. The tenant in possession, although he may have acquired his title by an actual ouster of the real owner, may yet maintain trespass against him who has no title. A *prima facie* title is always good against the mere wrong-doer.

3. But in this case the plaintiff had a legal title to the services of the minors, who, he alleges, were his servants.

The girl, Mary Cooper, was given by her parents to the plaintiff, and went to live with him under that arrangement when very young, and then and some years afterwards unable to perform labor, and requiring the care and nurture of the plaintiff and his wife. He thus acquired a title to her custody and services, which was good against every body except, perhaps, herself. So far as she is concerned, the arrangement or agreement between the plaintiff and her parents may be voidable, or absolutely void, but against all others it is a valid transaction.

It is an arrangement which amounts to a gift, or a transfer for a good consideration, of the custody and services of the child,

and is frequently made by poor and destitute parents, beneficial both to parents and child ; gratifying to the childless, who thus substitute by adoption what they have failed to receive by the gift of Providence, and is to be for those reasons favored by courts of justice. And certainly the mere wrong doer will not be permitted, on account of this defect of title in the plaintiff, if it be one, to disturb and break up an arrangement so advantageous both to parents and children, and beneficial to the interests of society.

And so far as John B. Cooper is concerned, it is believed that the relation of master and apprentice legally existed between the plaintiff and him. He was, with his own written consent, apprenticed by his father, by indentures in common form, to Oliver Shepard, and by Shepard to the plaintiff, by an instrument in the same form, denominated, in the case stated, a " contract ;" also with his own written consent. If these instruments were not binding upon the parties in the technical form of indentures, as prescribed by the statute, they were certainly contracts which were not absolutely void, but voidable, and were subsisting contracts so long as the apprentice consented to be bound by them.

An indenture of apprenticeship is not void on account of the infancy of the parties. *Rex* v. *St. Petrex*, 4 Term R. 198. Also, an indenture of apprenticeship, although void under the statute, may be good between the parties, so long as the infant serves under it. It is a voidable instrument only. *Rex* v. *St. Nicholas*, 1 Burrow's Sett. Cases 94, 95. And such is the doctrine held by the courts of the State of New-York.

Indentures of apprenticeship which are not conformable to the statute, (2 R. S. 218,) are voidable only by the apprentice, and cannot be avoided by any other person or party. *Fowler* v. *Hollenback*, 9 Barb. Sup. Ct. 309. And so it is held in Delaware. An indenture which was not authorized by the Delaware act, or not conformable thereto, is not void but voidable only. *Seeby* v. *Cox*, 2 Harrington, 184.

Nor is the indenture, or contract of service, made by the

plaintiff of the one part, and the said Shepard and John B. Cooper on the other part, void, but voidable only, and that by the infant himself. Where indentures of apprenticeship were assigned with the consent of the apprentice, who voluntarily continued thereafter to live with and work for the assignee during the term of the apprenticeship, it was held that it might be deemed a continuation of the apprenticeship, with his own consent, and that he could not recover of the assignee for his service during that time on an implied assumpsit. *Williams* v. *Finch,* 2 Barb. Sup. Ct. 208. And although a contract of apprenticeship be void, yet, while the parties reside together, mutually performing the conditions of the contract, the relation of master and apprentice subsists as if the indentures had been binding. *Maltby* v. *Harwood,* 12 Barb. Sup. Ct. 473.

But if the contract subsisting between the plaintiff and said Shepard and John B. Cooper, cannot be regarded as an indenture creating what is technically called an apprenticeship, it is a contract for service, establishing the relation of master and servant, and voidable only by the minor.

An infant's contract for service is only voidable. Bingham on Infancy 31 ; *State* v. *Dimick,* 12 N. H. 194 ; *Moses* v. *Stevens,* 2 Pick. 332 ; *Nickerson* v. *Easton,* 12 Pick. 110.

But although contracts for service made by an infant are voidable, and when avoided by him are so from the beginning, if he so elect, as recently held in this State, (*Lufkin* v. *Mayall,* 5 Foster 82,) yet it is a personal privilege, of which the infant alone can take the advantage. McPherson on Infants 478.

4. Applying to this case the principles settled by the authorities above cited, it appears that it is not necessary that the relation of master and apprentice should exist between the plaintiff and the minor children enticed away by the defendant, by express contract, nor even by a valid one. The relation of master and servant *de facto* only is necessary to enable the plaintiff to maintain his action against the defendant, who has induced them to interrupt that relation, and to leave his service.

Nor can the defendant allege that the contracts under which

the minors were serving were not binding on them. They may avoid them, and may perhaps maintain actions for their labor performed, in pursuance of their provisions; but he cannot do it; and if he entices them to avoid such contracts, and to leave the service of the plaintiff, he does a wrong to the plaintiff for which he is legally responsible.

It is for the interest of the minors themselves, and for the community, that such arrangements, made for the benefit of children, should be protected from the invasion of the mere wrong doer. It is for the interest of destitute and friendless children that they should be provided with homes, nurture, employment, education, and salutary discipline, in their infancy and minority; in short, that they should find some one who will stand to them in the place of a parent during that portion of their lives. It is for the interest of the community that agreements and arrangements having that purpose in view should be undisturbed and permanent. It is for the public interest that children in service, without the protection of parents or guardians, should remain in steady employment. But there would be no permanency nor stability in such arrangements, if another party were permitted, without right, and perhaps prompted by his own selfish purposes, to intermeddle with such salutary, although, on the part of the infant, voidable contracts. If such were the law; if wrong doers were permitted to interfere, and with promises of higher wages or improved condition, entice away minors in service, under such circumstances no prudent man would give them a home or employment, nor adopt them into his family, as many now do. They would be subjected to the hard and rigid practice of binding out by indenture—a practice which is not so much favored by public sentiment as it once was.

And while he who induces the servant to leave his master under such circumstances may be punished for disturbing that relation, the law gives ample protection for the infant, in securing to him the right to avoid his contract whenever he pleases, and to claim a just compensation for the labor which he has performed under it. Besides, if he is maltreated or detained in service

Campbell v. Cooper.

against his will, the law provides redress and relief, by action of trespass or by *habeas corpus*. These remedies give him ample security against overreaching, injustice or violence on the part of his employer; without the additional security which might result from extending protection to him, who, by artful tales, entices the infant from a good home and steady employment, and implants in his mind the seeds of discontent, unsteady habits, and a wanton disregard of his promises and contracts.

*Lovell & Wait*, for the defendant.

The defendant contends: In order to enable a party to maintain an action at law, he must have received an injury to some of his legal rights. It is not enough that his interests may have been injuriously affected, but some *right*, which the *law recognizes*, must have been infringed. Any thing short of this, although a damage, is, in legal contemplation, *absque injuria*. 3 Bl. Com. 116; 1 Chitty Pl. 83.

Tested by this rule, the case clearly, as we think, discloses no cause of action.

In order to give this plaintiff such a right to the services of these children, John B. and Mary Cooper, as to enable him to maintain this action, he must have had such a title to them as the law recognizes. This he had not.

The claim of the plaintiff to these children is equally groundless, whether he seeks to found it upon contracts with them, or upon any other title. Allowing that there existed a contract of service between the plaintiff and these children, it was in no degree binding upon them. *Heath* v. *West*, 6 Foster 191; 2 Kent's Com. 234.

An indenture of a minor, binding himself as an apprentice, so far as respects any rights of the master is wholly void; although the latter may be bound by his own covenant, should the minor so elect. *Guy* v. *Felton*, 4 Taunton 876; Comyn's Digest, Title, Enfant, (C. 2.)

The indentures are not binding upon the minor, while residing with the master in the performance of their provisions. And

this we maintain, notwithstanding the cases cited to the contrary by the counsel for the plaintiff.

In the cases of *Rex* v. *St. Petrex* and *Rex* v. *St. Nicholas*, the questions were, whether an infant, having served the requisite time under indentures not in accordance with the statute of 5 Elizabeth, chap. 4, thereby gained a settlement. These decisions, therefore, have no application to the present question. The other cases cited to this point by the plaintiff's counsel are in direct conflict with the case of *Lufkin* v. *Mayall*, 5 Foster 82, and are consequently not law in New-Hampshire. According to this case of *Lufkin* v. *Mayall*, these children might at any time repudiate their contract with the plaintiff, and recover wages for their services, as if it had never existed.

But the claim which this plaintiff sets up to these children is not founded upon contracts or agreements with the children themselves. In the case of Mary it is based upon the gift of her parents, without the acquiescence, even, of the child herself. In the case of John, the plaintiff bases his claim upon indentures between other persons assuming to bind him to service, the only part taken by the boy himself being the testification of his assent to what was done by others.

The only method known to our law by which a person can acquire a title to the custody or services of minor children, in the situations in which these children were when they went to reside with the plaintiff, is that prescribed by our statutes upon that subject. Comp. Stat., chap. 160.

By neither of these transactions did the plaintiff acquire any title whatever to the custody or services of either of these children. No such method of transferring children as this assumed gift of Mary by her parents, is recognized by our law. Neither do the indentures or contracts mentioned in the case confer upon the plaintiff any title to the services of John. Not being executed in pursuance of the statute, they possessed no binding force. Even allowing the indenture between the father of John and Oliver Shepard to have been good between them, (which it

clearly was not,) Shepard could not assign or transfer this minor to the plaintiff, so as to bind the minor. Bacon's Ab., Title, Master and Servant, (E.) ; 2 Kent's Com. 288, and note *a.*

Hence it must follow that both these children could rightfully leave the custody and service of the plaintiff at their own pleasure.

The decision to be made in this case depends, then, upon this only question, viz: Whether a person holding the custody of a minor, requiring service from him, without any title to such custody or service known to the law, can maintain an action against any one who should persuade such minor to discontinue such service and leave his custody.

And it is asked by the plaintiff that the affirmative of this question be solemnly adjudicated by the court. We apprehend, however, that such a conclusion will not be found warranted, either by principle or authority.

These children having the right to leave the service of the plaintiff at their own option, the defendant can in no sense be termed a wrong-doer in presenting to them an inducement to do so. When they left him, they did so in the exercise of a lawful right which they possessed, and that of itself terminated the relation of master and servant, so far as any existed between them.

Neither the law of New-Hampshire nor the common law possess any principle by which priority of possession gives priority of right to the custody or services of minor children. This may do with respect to property, but we submit that in our law, to property it is confined.

The leaving of the custody and service of the plaintiff by their children was an act in itself evincing a purpose of terminating the existence of the relation of master and servant between them. By this act that relation was terminated, and the plaintiff had no further claim or right to their services. It was wholly immaterial to him or his interests, what was their motive for terminating this relation, or by whom this motive was suggested. The children had a right to act from such motives as they deemed proper.

The weight of authority bearing upon this question is decidedly, as we think, against the plaintiff's right to recover in this action.

That the mere being in a person's employ, with no obligation to remain in it, does not so constitute the relation of master and servant as to enable the employer to maintain his action for enticing them away, is supported by the case of *Hart* v. *Aldridge*, Cowp. 54 ; where the only ground upon which the plaintiff was allowed to recover was, that the servants enticed away had each a pair of shoes unfinished, and which they were under obligation to complete.

That the master, in order to maintain an action for enticing away or harboring his apprentice, must have a legal title to the services of the apprentice, see 15 Viner's Abr., Title, Master and Servant, (O.) 23 ; *Guy* v. *Felton*, 4 Taunton 876. See, also, the case of *Smith* v. *Birch*, 1 Sess. Cas. 222, and S. C., 1 Batt. 253, cited, as directly in point, by the counsel, Shepard and Vaughan, in *Guy* v. *Felton*, and *St. Clair* v. *Jones*, Addis. 343.

The case of *Keane* v. *Boicott*, 2 H. Black. 511, is not supported by any authority cited by the court in delivering their opinion ; and we submit that it has not the support of any other authority, either English or American ; that it is in conflict with many of the authorities already cited, and is not law, either in England or New-Hampshire.

The question in the case of *Bonnel* v. *Batzman*, 3 Watts and Serg. 178, was very different from the one now before the court, and has no application to it.

The following distinction is well warranted, both by principle and authority, and will, we think, be found to reconcile most of the decisions upon this subject, viz :

Where the master has such a title to the services of the apprentice or servant, as he can enforce against the apprentice or servant himself, (or perhaps against the person or authority rightfully binding him to service,) there the master may have an action against any one who should entice or seduce him away. But where the master has no such title, he can maintain no ac-

tion for merely seducing or enticing the servant away; but if the servant is *actually residing* with the master, rendering services to him, then the master may have an action against any one who should deprive him of that service, by disabling the servant, by force against his will, either by beating, or forcibly abducting the servant; or if a female, by seduction. See, upon this point, 15 Viner's Abr., Title, Master and Servant, (O.) 203, which cites F. N. B., where it is said that this very distinction was well taken by *Finchden*. See, also, *Guy* v. *Felton*, 4 Taunton 876, and the authorities cited by the plaintiff's counsel.

In the case of *Barber* v. *Dennis*, 1 Salk. 68, and 6 Mass. 69, the apprentice was *taken* from the mistress, and put on board a queen's ship. This case, therefore, belongs to this latter class of cases.

As to the principles on which this distinction rests. Where a person is actually rendering service to another, although under no obligation to continue it, yet the employer has a right to these services so long as the servant is willing to render them, and so long as the relation of master and servant between them continues. And one who should deprive the master of these services, while that relation subsists, by disabling the servant, would be a wrong-doer as against the master, because he deprives him of an advantage which he was actually receiving, and which he would have continued to receive, but for the wrongful act which disables the servant. The relation of master and servant is not by this act dissolved, but still subsists between the parties. The servant still continues the servant of the master, notwithstanding the act of the wrong-doer; but is disabled from performing those services which he was willing to render, was in the act of rendering, and would still have continued to render, but for the wrongful act which disables him. This is an injury, then, to the actual possession of the master.

But in the case where inducements only are held out to the servant to leave the service of his present employer, upon which he thinks proper to act, he there does an act which he has a right to do; the relation of master and servant, by the act of the

servant, is terminated, and the master is deprived of nothing which he had any title to claim.

Finally, in order to render this defendant liable in this action, the law must be reduced to this absurdity, viz :—of pronouncing a man a wrong-doer, and punishing him as such, for advising the commission of a rightful act.

SAWYER, J.  The claim of the plaintiff is for damages on account of the alleged unlawful acts of the defendant, in enticing away from the service of the plaintiff the two minors, Mary Cooper and John B. Cooper, and receiving and harboring them, while owing service to him.  It is well settled that to entice away from the service of the master one to whose services he is entitled, is in law an injury for which he may have redress in damages.

Two positions have been taken by the counsel for the plaintiff in the argument.  1. That the plaintiff had the legal right to the services of the minors as against them at the time they were enticed from him; and, second, that if he had no such legal right as against them, nevertheless the relation of master and servant in fact existed between them and him at the time they were enticed from him, and that constitutes a sufficient ground upon which to claim redress as against the defendant.

The first enquiry then is, had the plaintiff a legal right to the services of the minors, or either of them, at the time they were enticed from his service.  The claim to the services of John B. Cooper rests upon the indentures of apprenticeship entered into between his father and Oliver Shepard, when John was about nine years of age, and similar indentures subsequently entered into between Shepard and the plaintiff before the minor became fourteen years of age, and the assent of the minor in both cases endorsed upon the indentures, or otherwise given in writing.  We understand the indenture between the father and Shepard to have been entered into subsequently to March, 1843, when the Revised Statutes took effect.  By the provisions of chap. 151 of those statutes, in force when the indenture was executed, and remaining ever since unchanged, children under the age of four-

teen years may be bound as apprentices or servants until that age, without their consent. Minors, above the age of fourteen years, may be bound, males until 21, and females until 18, or marriage, with their consent distinctly expressed in the indenture, signified by their signing it. The chapter further provides that no minor shall be bound except by an indenture of two parts, signed, sealed and delivered by both parties.

It is clear that no right was acquired by Shepard himself to the services of the minor under this instrument from the father, as an indenture of apprenticeship under the statute. As such, it failed to bind the minor to the service, because the statute expressly declares that no minor shall be so bound without an indenture of two parts, and the case finds that this was not in two parts.

But, considered not as a statute indenture, but as a common law contract, it may give to the party with whom the father contracts a right for the time to the services of the minor. It may be regarded as a license, given by the father to take the custody of his minor son, and employ him in the manner stipulated in the indenture. If the father thus places his minor child in the custody of another, under an agreement that the child shall labor for him, it would constitute for the time the relation of master and servant, entitling the master to the remedy for enticing the minor from his service. Such agreement would give the legal right to the services of the minor for the time being.

But the further question arises, would such agreement give the legal right to the services of the minor for a stipulated time, extending beyond the life of the father. At common law the father is entitled to the services and earnings of his minor children, because he is bound to support and educate them. The right grows out of the obligation, and is correlative to it. When one ceases the other ceases also. The helplessness of the infant, demanding the tutelage and support of the father, in contemplation of law terminates in ordinary cases at twenty-one, and the child becomes emancipated from parental control and entitled to his own earnings. If, by reason of continued helplessness, aris-

Campbell *v.* Cooper.

ing from physical or mental infirmity, the emancipation does not then take place, and the burthen of the support continues, the corresponding right to the services continues with it. If, anticipating the period of emancipation, fixed by law at the age of twenty-one, the father surrenders to the son the right to his earnings at an earlier age, and permits him to go into the business of life as his own master, while he thus continues independent of parental control the obligation to support him remains suspended. So, too, if the father drives his minor son from his home, and refuses to contribute to his support, the right to his earnings is also suspended so long as this dereliction of duty continues.

But this obligation to support the child continues only during the lifetime of the father. However large may be the estate which the father leaves at his death, the common law gives no claim to the child upon it which may not be defeated at the pleasure of the father. By the civil law the father is not at liberty totally to disinherit his child at his death, without good and sufficient reason expressed in the will. Without such reason assigned in the will it may be set aside by the child thus disinherited, as a testament contrary to the natural duty of the parent. But the common law leaves every man at liberty to dispose of his estate as he pleases, even to the extent of devising all his property to strangers or otherwise, as caprice may dictate, and leaving his infant children to be supported at the public charge. In 5 Vesey 444, Lord *Alvanley* said he was afraid that such was the common law of England. It is certain that such is the law of this State, except so far as the common law has been modified by the statute provision, that the solvent estates of persons deceased shall be chargeable with the support of the infant children until they shall arrive at the age of seven years.

The common law, then, while it imposes upon the father no obligation to make provision for the support or education of his infant children after his decease, does not confer upon him the right correlative to it, to bind them to service after his decease.

The father is not to be considered as having an absolute right

of property in the labor and services of his offspring until twenty-one. Whatever right he has, it is but a qualified and contingent interest, depending on their living with him and being maintained by him, and arising out of the personal trust under which he holds them for their protection and tutelage. While he continues to furnish them support, he may appropriate their earnings to his own use, but he has no present property in their future earnings, except as coupled with the condition that he shall be burthened with their support when the earnings accrue. These views are abundantly sustained by the authorities.

In the case of the *People* v. *Mercein*, 3 Hill. N. Y. 399, *Cowen*, J., in an opinion marked throughout with great ability, denies the power of a father to alienate or dispose of his children during their minority, except for the specific and temporary purposes recognized by statute, such as apprenticeship in the lifetime of the father, and testamentary guardianship at his decease. " These," his children, he says, " the father holds under a personal trust, inalienable to any other person. Those countries," he adds, " in which the father has the general power to dispose of his children, have always been considered barbarous. Our own law has never allowed the exercise of such power, except for those specific and temporary purposes." In New-Jersey it has been decided, in accordance with these views, that a father may recover back the possession of his infant child in disregard of his agreement to commit the infant to the care and custody of another till twenty-one, and under which agreement the child had been adopted and treated as a son by the person to whom it was thus committed. *Mayne* v. *Budwin*, 1 Halstead Ch. R. 454. In England, also, in the recent case of *Queen* v. *Smith*, in the court of Queen's Bench, 16 Eng. L. and Eq. R. 221, it was decided that where the father had agreed with his infant child's uncle to permit the infant to live with the uncle as his child, to be brought up and educated until the infant was grown up and able to take care of herself, and the uncle had agreed to bring her up and educate her as his daughter, and the custody of the child was committed to the uncle in pursuance of the agreement,

the father, notwithstanding the agreement, might revoke his consent, and that the court, on a writ of *habeas corpus* obtained by the father, was bound to order the child to be restored to the father's custody. In *Day* v. *Everett*, 7 Mass. 145, Ch. J. *Parsons* says, the father may contract that his minor son shall labor in the service of others for a day, a month, or any longer time, so that the time do not exceed the period of the child's emancipation from the father, which may take place as well on the father's death as on the son's arriving at the age of twenty-one years.

In *Jenness* v. *Emerson*, 15 N. H. 486, which was an action by a minor to recover for his labor and services — the father being dead and the mother insane and a pauper — it was decided that the mother was not entitled to the earnings of the son, she not maintaining him ; and the doctrine was fully recognized that it is only when parents are bound to support and do actually support their children, that they are entitled to their earnings. In delivering the opinion of the court, *Wood*, J., after a careful review of many of the leading American cases on the subject of the common law principles regulating the correlative rights and duties of parents and children, says, " it seems entirely clear, upon the principles maintained in all the authorities, that the mother has no right or claim to the services of a minor child in a case where she is not bound or liable for its support. When no such duty exists, no such right exists. The right to the services arises directly out of the duty and liability for support."

It is clear, then, that all power on the part of the father over the labor and services of his minor child ceases at his death, except so far as such power may be conferred by statute. That an apprenticeship created in conformity to the requirements of the statute may continue to bind the child after the death of the father, is not doubted, but this power, like that which the father may exercise under the statute of Charles II., chap. 24, of appointing testamentary guardians of his minor children, is derived, not from any common law principles, but from the express declaration of the statute. Whatever view may be taken of the

character of the contract between the father in this case, and Shepard, it, not constituting a statute apprenticeship binding the son to the service, ceased to have any validity at the death of the father, and consequently gave to Shepard no right to the services of the son, to be transferred by him to the plaintiff. Besides, if it constituted a statute apprenticeship, it would seem that it was upon such personal trust that the master could not permanently transfer the services of the apprentice to another upon the condition of his giving the instructions to the apprentice which the indentures stipulated for from him. *King* v. *Stockland,* Doug. 70 ; *Caister* v. *Eccles,* 1 Ld. Raymd. 683 ; *Nickerson* v. *Howard,* 19 Johns. 113. In *Coventry* v. *Woodhull,* Hobart 134, it is said, " the matter of putting an apprentice is a matter of great trust; wherefore, I will by choice commit him to one and not to another." And in Bacon's Abridgement, Tit. Master and Servant, E., it is said, " the placing out an apprentice to a particular person arises from an esteem and good opinion of the party to whom he is so committed. The law makes it such a personal trust and confidence that the master cannot assign or transfer it over to another." This view is recognized by the statute of this State relative to apprentices, sec. 6, chap. 160 of Compiled Statutes, which provides that no indenture shall be binding after the death of the master.

The plaintiff, then, acquired no legal right to the services of the minor, John B. Cooper, as against the minor himself, in virtue of the indentures executed by the father. The written assent of the minor to the contract between Shepard and the plaintiff may, however, be considered as an agreement by the minor himself to labor for the plaintiff, upon the terms stipulated, until he became twenty-one. Such a contract on the part of the infant is not void except at his election. Until avoided by him it is valid as between the parties and as to third persons, in the same manner as if made by an adult. The minor having entered upon its fulfilment, thereby created the relation of master and servant between the plaintiff and himself; and until he chose to disaffirm the contract the master may properly be said to have a

legal right to the services rendered. Any act done by the minor, clearly indicative of his intention not to be bound by it, would avoid it, and from the time of the avoidance it becomes a nullity for all purposes. It is even held thereby to be made a nullity *ab initio*, whenever it is necessary so to consider it for the purpose of preventing injustice to the minor. *Lufkin* v. *Mayall*, 5 Foster 83. But it is clear that, from the time of the disaffirmance at least, the master could in no sense be said to have a legal right to services which by the terms of the contract were thereafter to be rendered.

Considering the written assent of the minor, then, as a contract with the plaintiff to render the service, it was in law a contract to which the minor had the right to put an end at any moment. It was in substance as though it had contained a stipulation to the effect that the minor was at liberty to leave the service of the plaintiff at his pleasure. By leaving it he clearly manifested his intention not to be bound by it, and it became null and void, and the plaintiff could have no claim under it to any future service.

The claim of the plaintiff to the services of the other minor, Mary Cooper, rests upon a parol gift of the child to him by her parents a short time previous to their death.

The views which have already been suggested are decisive of such claim as a legal right against the minor. The gift during the lifetime of the father, upon the authority cited, would merely amount to a delegation of the parental power for the time, subject to be revoked at the pleasure of the father. It is unnecessary, however, to hold this doctrine in the present case, because, whether it could or not be revoked by the father in his lifetime, it is clear, both upon principle and authority, that it was valid only to the time of his death. At the time when the minors were enticed away from the plaintiff, then, neither of them was owing him a service arising from any contract made by their father, or by themselves, binding them to render such service, and consequently, as against the minors, he was not legally entitled to their future services for any period subsequent to the time when they left his employment.

But it is said that the relation of master and servant in fact subsisted at the time between the plaintiff and them, and that this is sufficient to entitle the plaintiff to the redress which he seeks. But upon this point we think the distinction suggested by the counsel for the defendant in the argument may well be sustained. That the relation of servant *de facto* is sufficient to give to the master a right of action against one who deprives the master of the services by violence done to the servant, as by an assault or a forcible abduction of the servant; or, if a female, by seducing her, the relation not being terminated as between the master and servant by the acts complained of, cannot be doubted. The gist of the action in all such cases is the loss of the service while the relation of master and servant continues, and the service is recognized by the servant as due, in virtue of a contract by which he is bound in law, or which, being voidable, he elects to consider as binding, and had not avoided when the lost service was owing. In such case it is not the right of a third party to deprive the master of the services, even if they were due and owing to the master, only because the servant elected to consider them so due and owing. It is enough to subject him to liability, that the relation of master and servant, which they had established between themselves, and which they were content to treat as requiring the service, had not been terminated when the loss of service occurred.

But in this case the grievance of which the plaintiff complains in fact, is the loss of service after the period when the relation of master and servant was terminated by the lawful act of the servant, in leaving the master and repudiating the contract. The alleged unlawful act of the defendant consists in his persuading the minors to put an end to the period of service, as by the character of their contract, if it is to be considered a contract, or by the nature of the arrangement, whatever it was, under which their services were rendered, they had a legal right to do. For doing this the law gives no right of action to the plaintiff, for the reason that by it no legal right of his has been invaded.

Campbell *v.* Cooper.

The principle involved in the decision of the case of the *Glass Manufactory* v. *Binney & al.*, 4 Pick. 425, is applicable here. That was an action for enticing away from the employment of the plaintiffs certain workmen skilled in the manufacture of glass. The workmen were in the plaintiffs' employ down to the day when they went into the defendants', under an agreement that they would not leave the service of the plaintiffs without giving two weeks previous notice. Inducements were held out to them by the defendants to quit the plaintiffs and engage in the service of the defendants. Having given the notice, they continued to work for the plaintiffs for the two weeks following, and then entered into the service of the defendants. In delivering the opinion of the court, *Wilde*, J., says, the defendants had a legal right to make a contract with the plaintiffs' laborers, to take effect after the expiration of their time of service with the plaintiffs; and he then refers to the case of *Nichols & al.* v. *Martyn*, 2 Esp. 732, in which he says the law is laid down correctly by Ld. *Kenyon*, that to induce a servant to leave his master's service at the expiration of the term for which the servant had hired himself, although the servant had no intention at the time of quitting his master's service, is not actionable. To hold out inducements to the servant to terminate the period of service, where, by reason of the voidable character of the contract under which the service is rendered, this may lawfully be done by him at his pleasure, may deprive the master of services which, but for the inducements so held out, he would probably have received; but this is not a loss of services to which he had right or even the color of right. It is, therefore, a loss to the master only in the sense that the benefit of the service has not been continued to him by the servant having the right to withhold it, to the extent that it otherwise might have been.

There is no recognized principle upon which a third person can be held liable in law as a wrong-doer for holding out inducements to the servant thus to exercise his legal rights; and we are not aware of any ground for extending to cases of this character the principles of law applicable to the case of the loss of

Campbell *v.* Cooper.

service rightfully owing to the plaintiff through the wrongful act of a third person.

It is not improbable that instances often occur of injudicious intermeddling with minors, situated as were these, to the prejudice not only of the party acting the part of a parent to the minor, but also of the minors themselves. This may possibly be such a case. But if it be, it cannot change the principles by which the right of the plaintiff to the services of the minors, and the legal liability of the defendant in connection with them, are to be tested. The true remedy for such ill-judged intermeddling is not to furnish ground for a new class of lawsuits, seeking for damages on account of it, by holding it to be an invasion of the legal rights of the master when his proceedings in attempting to secure to himself the services of the minors have been of so loose a character as to give him in law no right to their services, but rather to hold strictly to the established principles applicable to such cases, and thus compel parties who would guard against such intermeddling, in making their arrangements, to secure to themselves the labor and services of the children of other parents, to resort to the plain and safe mode prescribed by the statute — indentures, executed with the formalities required to constitute a statute apprenticeship, by which the just rights of both minor and master are fully secured.

*Judgment on the nonsuit.*