Hillsborough
No. 90-067

THE NEW HAMPSHIRE DIVISION OF HUMAN SERVICES,
*ex rel.* NANCY M. HAHN

v.

DENNIS R. HAHN

December 31, 1990

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief and orally), for the State.

*Dennis R. Hahn*, by brief and orally, *pro se*.

BROCK, C.J. This is an appeal from the Superior Court's (*Barry*, J.) denial of the New Hampshire Division of Human Services' (Division) motion, on behalf of Nancy M. Hahn (mother), to require the defendant, Dennis R. Hahn (father), to pay his child support obligation through the Division, instead of directly to his former wife. The Division argues that, as a matter of State and federal law, a parent receiving child support, who does not receive public assistance, may compel the obligor parent to pay child support through a State agency, regardless of whether an arrearage in support payments has occurred. We disagree and, for the reasons that follow, remand the case to the superior court for further proceedings.

The Hahns were divorced in September, 1985. Pursuant to a set of permanent stipulations, made part of the final divorce decree, the father was to pay $215 a month directly to the mother in child support. In September, 1989, the mother, as a non-recipient of public assistance, applied to the Division for "support enforcement services" under RSA 161-B:3, II. In her application, she alleged that the father was delinquent in his child support obligation. The Division determined that she was eligible for services, whereupon, pursuant to RSA 161-B:5, it petitioned the superior court to modify the 1985 support order to require the father to make his payments through the Division. The father objected, and after a hearing, the trial court denied the Division's motion. No factual findings as to the father's alleged delinquencies were included in the court's order. Thereafter, the Division filed a motion for reconsideration, which the trial court also denied.

On appeal, the Division does not take issue with the court's absence of findings on the alleged delinquencies, but argues that the question of arrearages is irrelevant to the legal determination of whether the father should be compelled to pay through the State. It asserts that the superior court erred as a matter of law in denying its motion, when the Division has shown that (1) the father is under a support obligation and (2) the mother has applied for the Division's services.

■■ We begin our analysis with a consideration of the two provisions that the Division claims authorize the action it now seeks, RSA 161-B:3, II and RSA 161-B:5. Following basic tenets of statutory interpretation, we first examine the language of the text; to the extent that it is not specifically defined, we give the language its plain and ordinary meaning, if possible. *Petition of Jane Doe*, 132 N.H. 270, 277, 564 A.2d 433, 438 (1989). In doing so, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein. *Town of North Hampton v. Sanderson*, 131 N.H. 614, 622, 557 A.2d 643, 648 (1989).

RSA 161-B:3, II reads as follows:

> "The director [of the Division] may accept applications for *support enforcement services* on behalf of persons who are not recipients of public assistance and may take action as he deems appropriate to establish or enforce support obligations against persons owing a duty to pay support. Action may be taken under this chapter, the abandonment of nonsupport statutes, or other appropriate statutes of this state . . . to establish and enforce said support obligations."

(Emphasis added.) The Division is further authorized to commence an action before any court to meet its responsibilities to any person "for whom the division has a duty to obtain or enforce an order of support. . . ." RSA 161-B:5. The issue, then, is whether State "support enforcement services," under RSA 161-B:3, II, include compelling the father, regardless of whether he is in arrears, to pay his child support obligation through the Division. Nowhere within RSA chapter 161-B or any other chapter has the legislature defined "support enforcement services." The Division argues, however, that an examination of both State and federal child support enforcement laws reveals a clear mandate for the power it now seeks to exercise. We disagree.

RSA chapter 161-B, entitled "Support of Dependent Children," is a single component of a complex relationship between federal and State statutes which are designed to address the problems associated with noncompliance with child support orders. In 1975, Congress amended the federal Social Security Act by establishing a child support enforcement program, *see* 42 U.S.C. §§ 651–669 (1983 & Supp. 1990), commonly referred to as the "IV-D program." This program requires each State that desires federal assistance with child support enforcement to develop and implement a federally approved "plan" for the delivery of child support program services to its citizenry. *See* 42 U.S.C. § 601. Moreover, in order to receive federal Aid to Families with Dependent Children (AFDC), a State must operate a child support enforcement program that meets the requirements of the IV-D program. 42 U.S.C. § 602(27) (Supp. 1990).

■ Initially, we must determine whether the mother, a non-AFDC recipient, can obtain the benefits of the enforcement program. Section 654 of the act sets out in considerable detail the required constituents for a State's child support enforcement "plan." 42 U.S.C. § 654 (1983 & Supp. 1990). Of particular relevance is the requirement that the State plan provide that "child support collection . . . services established under the [State] plan shall be made available to any individual *not otherwise eligible* for such services upon application filed by such individual with the State. . . ." *Id.* § 654(6)(A) (emphasis added). Individuals who are "otherwise eligible" are those persons who receive AFDC and who, consequently, must assign their right to receive child support to the State pursuant to 42 U.S.C. § 602(26)(A) (Supp. 1990). Those who are "not otherwise eligible," therefore, are non-recipients of AFDC. *See Carter v. Morrow*, 562 F. Supp. 311, 313 (W.D.N.C. 1983). Accordingly, a State plan must make whatever support enforcement services it provides for AFDC recipients also available to individuals not receiving AFDC. *Id.*; *see also* 45 C.F.R. § 302.33 (1989).

Having concluded that the mother can avail herself of these services, we next decide whether these services include compelling a non-delinquent father to pay his support obligation through the Division. Congress does insist that specific services and procedures be made part of the State's child support enforcement program. *See* 42 U.S.C. § 666 (Supp. 1990). These services include, *inter alia*, procedures for withholding a delinquent parent's wages, *see* RSA 161-C:21 *and* RSA chapter 458-B (Supp. 1989) (enacted pursuant to 42 U.S.C. § 666(a)(1), (8)); procedures for obtaining a lien against a delinquent

parent's property, *see* RSA 161-C:10 (enacted pursuant to U.S.C. § 666(a)(4)); and procedures for reporting a parent's delinquency to consumer reporting agencies, *see* RSA 161-C:26-a (enacted pursuant to 42 U.S.C. § 666(7)). While AFDC recipients must assign their rights to child support to the State, *see* 42 U.S.C. § 602(26)(A), which in turn requires that the support payments be made directly to the Division, *see* RSA 161-B:4 (enacted pursuant to 42 U.S.C. 654(5)(A)), nowhere within either the federal or the State statute is it clearly required that a non-delinquent parent be compelled by a non-AFDC parent to pay his or her support obligations through the Division. To the contrary, the federal act provides that a State

> "*may at its option*, under its plan . . . , establish procedures under which support payments . . . will be made through the [Division] . . . in any case where the absent parent or the custodial parent requests it, even though no arrearages in child support payments are involved and no income with-holding procedures have been instituted. . . ."

42 U.S.C. § 666 (emphasis added); *see also* 45 C.F.R. § 302.57 (1989).

The Division claims that it exercised this option in its State plan, and in doing so provided another "support enforcement service" as described in RSA 161-B:3, II. The Division did make available to this court a copy of a provision, § 3.12, of a document entitled "State Plan, Child Support Enforcement Program (Title IV-D)," and that provision, which appears to be a federal form, certifies to the federal government that the Division has in place procedures permitted under 42 U.S.C. § 666. Contrary to the Division's assertions, however, this general and ambiguous provision, standing alone, does not establish a State "law or regulation" that is sufficient to deprive the superior court of its discretion to deny a motion for these services when no delinquency has occurred. While federal law requires the implementation of a federally approved State "plan," this does not dispense with this State's laws that govern procedures for enacting rules and policy statements that have the effect of law. *See generally* RSA ch. 541-A (Supp. 1988); *Appeal of John Denman*, 120 N.H. 568, 573, 419 A.2d 1084, 1088 (1980).

█ The Division does not dispute that, in order for it to acquire the authority to compel the father to make his payments through the State, it had to, as it did, request the superior court to modify the existing support order. *See* RSA 161-B:5. Instead, the Division asks us to restrict the superior court's discretion when neither the legislature nor the agency, pursuant to the legislature's direction, has com-

manded such a restriction. Absent a clear expression by the legislature or by an agency which has acted within its authority and adhered to the requirements of RSA chapter 541-A (Supp. 1989), we determine that the term "support enforcement services" in RSA 161-B:3, II does not include forcing this non-delinquent father to pay his support obligation through the Division.

If, in the case before us, the trial court had found that the father was in arrears of his support obligation, the father would be required to make his payments through the Division. *See* RSA 161-C:4, II and RSA 161-C:7, II. Because the trial judge did not make a determination as to the father's alleged delinquency, we remand the case to the superior court for a determination of that factual issue.

*Remanded.*

All concurred.