Hillsborough-southern judicial district
Nos. 94-268
94-269

ST. JOSEPH HOSPITAL OF NASHUA

v.

THOMAS E. AND MARY LOUISE RIZZO

ST. JOSEPH HOSPITAL OF NASHUA

v.

VIRGINIA SAVARD

May 13, 1996

*Welts and White, P.C.*, of Nashua (*Michael J. Fontaine* on the brief and orally), for the plaintiff.

*Hubbard & Quinn, P.A.*, of Amherst (*Donald F. King* on the brief, and *Richard H. Hubbard* orally), for defendants Thomas E. and Mary Louise Rizzo.

*Prunier & Leonard, P.A.*, of Nashua (*Gerald R. Prunier* on the brief and orally), for defendant Virginia Savard.

BROCK, C.J. The plaintiff in these consolidated appeals is a hospital seeking to collect from a patient's wife, claiming that she is liable for her husband's medical bills because she owed a duty of support to her sick husband, under the common law necessaries

doctrine and RSA 546-A:2 (1974). The Superior Court (*Hampsey*, J.) dismissed the hospital's claims in each case, and the hospital appealed. We affirm the dismissal of the statutory claims; on the common law claims, we reverse and remand for further proceedings.

The parties have stipulated to the facts. The plaintiff, St. Joseph Hospital of Nashua (the hospital), provided $21,088.95 worth of medical services to defendant Thomas E. Rizzo. On August 10, 1992, Mr. Rizzo was admitted to the hospital in an emergency state for treatment of a heart condition. He spent two days in intensive care, and eight more days in a two or more bed unit. His wife, defendant Mary Louise Rizzo, claims that she did not learn of Mr. Rizzo's admission to the hospital until the day after he was admitted. She visited him while he was being treated at the hospital.

At no time did Mrs. Rizzo authorize or agree to pay for Mr. Rizzo's services and bills. For several weeks after his discharge, Mr. Rizzo received outpatient services from the hospital, including rehabilitation and testing. The hospital sued Mr. Rizzo for payment of bills covering all of the foregoing treatment. The hospital obtained a default judgment, which Mr. Rizzo has indicated that he is unable to pay. In the present action, therefore, the hospital seeks to collect on this bill from Mary Louise Rizzo, the patient's wife.

Similarly, the hospital provided medical services to David Savard in the weeks prior to his death. The total bill for these services was $27,255.75. Although the hospital never entered into any contract or other agreement with defendant Virginia Savard, the decedent's wife, it has sued her for payment of her husband's bill.

The superior court dismissed the hospital's claims. It rejected the hospital's claims in the Rizzo case under RSA 546-A:2 on the ground that the statute creates a duty owed to spouses, children and parents, but not to third parties. It further reasoned in both cases that the statute's primary concern is child support.

As for the hospital's common law claims, the superior court held that the necessaries doctrine has only been applied to create a duty on the part of a husband to provide support for his wife's necessaries, but has never been extended to require a wife to do likewise. The court acknowledged that society's view of the marital relationship has evolved since the doctrine was created, but held that its jurisdictional mandate required it to apply the traditional common law rule, even though "the rule may be anachronistic."

We affirm the dismissal of the statutory claims. The question here is whether third party creditors such as the hospital have standing under RSA 546-A:2 to enforce a wife's support obligations to her husband. We hold that they may not collect their bills in this way.

In construing a statute, we look first to the plain meaning of the statutory language. *See Gilmore v. Bradgate Assoc.*, 135 N.H. 234, 237, 604 A.2d 555, 556 (1992). In so doing, we focus on the statute as a whole, not on isolated words or phrases. *N.H. Div. of Human Services v. Hahn*, 133 N.H. 776, 778, 584 A.2d 775, 776 (1990); *Town of North Hampton v. Sanderson*, 131 N.H. 614, 622, 557 A.2d 643, 648 (1989).

RSA 546-A:7 (1974), titled "Enforcement of Rights," states:

> The obligee may enforce his right of support against the obligor and the state or any political subdivision thereof may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the state or a political subdivision thereof furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support.

The word "obligee" is defined as "any person to whom a duty of support is owed." RSA 546-A:1, III (1974). The duty of support is defined in RSA 546-A:2 as follows:

> Every person whose income or other resources are more than sufficient to provide for his or her reasonable subsistence compatible with decency or health owes a duty to support or contribute to the support of his or her wife, husband, child, father or mother when in need.

The plain meaning of these provisions is to create a statutory right to sue in the obligee (husband, wife, child, father or mother), or, if the State or a political subdivision furnishes support to the obligee, then the statute creates a right on the part of the State or political subdivision to sue on the obligee's behalf for support. There is no ambiguity here; the statute contains no general provision granting to "any interested person" the right to sue to enforce this statutory duty of support, as do some other statutes. *Cf.* RSA 506:7, I, II (Supp. 1995) (authorizing specified persons or "any other interested party" who has satisfied certain statutory requirements to seek judicial redress relating to powers of attorney). Nor is there any reason to believe that the legislature intended to create a right to sue on the part of anyone other than the obligees named in RSA 546-A:2, the State, or political subdivisions.

The hospital argues that the statute does not specifically preclude third party creditors from having standing to sue. This argument is unpersuasive. We reiterate the familiar axiom of statutory construction *expressio unius est exclusio alterius*: "Normally the expression

of one thing in a statute implies the exclusion of another." *In re Guardianship of Raymond E.*, 135 N.H. 688, 691, 609 A.2d 1220, 1221 (1992) (quotation omitted). Here, the legislature specified which entities would possess the right to sue under RSA 546-A:2, and could have included additional potential plaintiffs if it were so inclined. If the legislature did not add third party creditors to the list of proper plaintiffs, neither will we, in the absence of a clear showing of legislative intent. Accordingly, reading the entire statute as a whole, we hold that third party creditors such as the hospital do not have standing to sue to enforce the support obligations created under RSA 546-A:2.

We turn now to the common law doctrine of necessaries. In a decision issued after the superior court ruled in the instant case, we held that the doctrine of necessaries applies equally to husbands and wives. *See Cheshire Medical Center v. Holbrook*, 140 N.H. 187, 190, 663 A.2d 1344, 1347 (1995). We have considered the defendants' additional arguments urging us not to apply the common law doctrine to them, and we find them to be without merit. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993). Accordingly, we reverse the trial court's dismissal of these claims. The common law doctrine, as modified in *Holbrook*, 140 N.H. at 190, 663 A.2d at 1347, applies to make the wives in the instant cases liable to the hospital to the extent their husbands or their husbands' estates are unable to pay for the necessary medical services provided.

Although the doctrine rests in the common law, it is restitutionary in nature, *see* 1 D. DOBBS, LAW OF REMEDIES § 4.9(5), at 699–700 (2d ed. 1993), and remedies thereunder are to be fashioned in equity. Upon remand, the trial court should exercise its broad and flexible equitable powers "to shape and adjust the precise relief to the requirements of the particular situation." *Dunlop v. Daigle*, 122 N.H. 295, 300, 444 A.2d 519, 521 (1982) (quotation omitted); *Northern N.H. Mental Health v. Cannell*, 134 N.H. 519, 522, 593 A.2d 1161, 1163 (1991).

. *Affirmed in part; reversed in part; remanded.*

BRODERICK, J., did not sit; the others concurred.