Public Utilities Commission
No. 95-260

APPEAL OF ASHLAND ELECTRIC DEPARTMENT

(New Hampshire Public Utilities Commission)

September 25, 1996

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Richard A. Samuels* and *John P. Beals* on the brief, and *Mr. Samuels* orally), for the Ashland Electric Department.

*Dean, Rice & Howard, P.A.*, of Manchester (*Mark W. Dean* on the brief and orally), for the New Hampshire Electric Cooperative, Inc.

JOHNSON, J. The petitioner, Ashland Electric Department, (Ashland) appeals an order by the New Hampshire Public Utilities Commission (PUC) denying Ashland's request for a declaratory ruling that it may expand its distribution facilities within the Town of Ashland (town) without the PUC's authorization and requiring Ashland to follow the administrative procedures set forth in RSA chapter 38 before undertaking that expansion. We affirm.

The following findings of fact by the PUC are uncontroverted. *See* RSA 541:13 (1974); *Appeal of Public Serv. Co. of N.H.*, 141 N.H. 13, 16, 676 A.2d 101, 103 (1996) (findings of fact by the PUC are presumed lawful and reasonable). Ashland is a municipal electric utility, *cf.* RSA 362:2 (1995), whose service territory includes most of the town. New Hampshire Electric Cooperative, Inc. (NHEC) is a

rural electric cooperative, *see* RSA ch. 301, whose franchise area includes portions of the town not currently serviced by Ashland. The town decided to expand Ashland's service area to customers of NHEC residing along North Ashland Road. In March 1993, the Ashland Board of Selectmen, pursuant to RSA 38:6 (1988), notified NHEC that it had voted to acquire NHEC's transmission lines, utility poles and other equipment (the distribution plant) along North Ashland Road. *See* RSA 38:5 (1988). NHEC responded that it was unwilling to sell the North Ashland Road distribution plant. *See* RSA 38:7 (1988). Although authorized to do so by RSA 38:10 (1988), the town chose not to take NHEC's North Ashland Road distribution plant by eminent domain. Instead, it decided to construct its own distribution plant to service the North Ashland Road area.

Ashland petitioned the PUC for a declaratory ruling that neither RSA chapter 38 nor RSA 364:1 (1995) require it to obtain PUC approval before expanding its service area within town limits. NHEC objected and, after a hearing, the PUC denied Ashland's request for a declaratory ruling. Further, the PUC mandated that Ashland follow the procedures set forth in RSA chapter 38 before continuing with the proposed expansion. Ashland filed a motion for rehearing which was denied, and this appeal followed.

The essence of the dispute is whether, or to what extent, Ashland must comply with RSA chapter 38 in order to construct additional distribution plant on North Ashland Road. Both parties agree that chapter 38 applies to the acquisition of existing facilities or the construction of an entirely new municipal electric system. The parties disagree, however, about whether RSA chapter 38 applies in the instant situation; namely, when an existing municipal utility wants to construct parallel lines and distribution facilities within its corporate limits that will operate *in addition to* the existing poles and wires owned by a public utility.

"To the extent [a dispute] raises a new issue of statutory interpretation, we begin our inquiry with the examination of statutory language." *Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988), *appeal dismissed*, 488 U.S. 1035 (1989). RSA 38:3 states in pertinent part:

> Any municipality may take, purchase, lease, or otherwise acquire and maintain and operate in accordance with the provisions of this chapter, one or more suitable plants for the manufacture and distribution of gas, electricity, . . . for the use of its inhabitants and others, and for such other purposes as may be permitted, authorized, or directed by the commission; . . . and may . . . erect poles, place wires,

and lay pipes for the transmission and distribution of electricity, . . . in such places as may be deemed necessary and proper; and may change, enlarge, and extend the same from time to time when the municipality shall deem necessary . . . .

The PUC ruled that while RSA 38:3 provides "explicit authorization for certain actions by a municipal utility, including placing poles and wires, . . . [there is] no express authority for a municipality to construct electric plant within a franchised utility's service area without Commission authorization." *See Public Serv. Co. v. Town of Hampton*, 120 N.H. 68, 71, 411 A.2d 164, 166 (1980) (towns have only those powers that are expressly or impliedly granted to them by the legislature). The PUC further reasoned that because "RSA [c]hapter 38 delineates a comprehensive process by which a municipal utility may acquire or establish plant for the manufacture and distribution of electricity," RSA 38:3 must be read in conjunction with the rest of the statute. The PUC, in denying Ashland's request for a declaratory ruling, relied on RSA 38:10, which states that where a public utility refuses to sell its plant or fails to reply to the municipality's notice under RSA 38:6, "the municipality, . . . *after the commission upon proper notice and hearing has determined that it is for the public interest so to do,* may construct a municipal plant or may take such private plant and property by condemnation." (Emphasis added.)

 The standard of review of a PUC order is clear. "A party seeking to set aside or vacate an order of the PUC has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable." *Appeal of Public Serv. Co. of N.H.*, 141 N.H. at 16, 676 A.2d at 103; *see* RSA 541:13.

Ashland argues that the PUC's interpretation of RSA chapter 38 is erroneous as a matter of law because RSA 38:3 expressly grants municipal utilities broad powers to expand within their corporate limits. Ashland states that a plain reading of the phrase "may . . . erect poles, place wires . . . as may be deemed necessary and proper; and may change, enlarge, and extend the same . . . when the municipality shall deem necessary" grants it the authority to expand its existing distribution plant onto North Ashland Road without PUC approval.

NHEC responds that RSA 38:3, and in particular the phrase "any municipality may take, purchase, lease, or otherwise acquire and maintain and operate [plant] in accordance with the provisions of this chapter," is merely a general grant of power subject to the

limitations expressed in the rest of the chapter, including RSA 38:10. NHEC further asserts that the grant of power to "erect poles" and "place wires" in order to "enlarge, and extend the same" applies only to expansion within the municipal utility's *existing* service area. Ashland's interpretation of the statute, NHEC argues, is clearly contrary to the intent and purpose of RSA chapter 38.

 We interpret statutes "not in isolation, but in the context of the overall statutory scheme." *State v. Farrow*, 140 N.H. 473, 475, 667 A.2d 1029, 1031 (1995). Where statutory language is ambiguous, as in this case, we examine the statute's overall objective, and give substantial deference to the interpretation of those charged with its administration. *N.H. Retirement System v. Sununu*, 126 N.H. 104, 108, 489 A.2d 615, 618 (1985). The PUC ruled that the purpose of RSA chapter 38 was to discourage the construction of redundant utility lines. A fair reading of RSA 38:3 in conjunction with RSA 38:10 leads us to agree with the PUC that a municipal utility is empowered to expand within its existing, unserved, service area without PUC approval, but construction of distribution lines in territory served by a public utility may only take place after the municipality has followed the procedures set forth in RSA chapter 38. The statute sets forth in great detail the procedures a municipal utility must follow before acquiring or constructing "a plant." The enabling language of RSA 38:3 states that such activities must be undertaken "in accordance with the provisions of this chapter."

As the facts of this case make clear, Ashland's interpretation of the statute would allow a municipal utility, which, after following the process mandated in RSA chapter 38, is unsuccessful in its bid to acquire plant from an existing utility, to later bypass the entire statutory procedure. Because "[i]t is not to be presumed that the legislature would pass an act leading to an absurd result and nullifying to an appreciable extent the purpose of the statute," *State v. Kay*, 115 N.H. 696, 698, 350 A.2d 336, 338 (1975), Ashland's interpretation cannot stand.

Ashland also argues that the PUC's ruling "follows from its mistaken view that RSA 38 delineates a comprehensive process for acquisition or establishment of electric plant," because the "comprehensive process under RSA 38 is triggered only in the event of a vote taken as required by RSA 38:5." The relevant statute, RSA 38:5 states that "[a]ny town . . . may acquire or establish such a plant" only after voter approval at either the annual town meeting or a special town meeting. Ashland, relying on the dictionary definitions of isolated words within RSA 38:5, argues that it is inapplicable here, where the utility wants to "expand" its distribu-

tion plant (as opposed to "acquire or establish") by erecting poles and wire into a new service territory encompassed within town lines. Therefore, Ashland argues, because RSA 38:5 does not apply, Ashland is not subject to the requirements of the remainder of RSA chapter 38, in particular RSA 38:10.

■ It is true that we first look to the plain and ordinary meaning of words to interpret our statutes. *See* RSA 21:2; *Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 545, 608 A.2d 870, 872 (1992). However, as Judge Learned Hand noted a half century ago, "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404 (1945). Therefore, while we give undefined language its plain and ordinary meaning, "we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein." *N.H. Div. of Human Services v. Hahn*, 133 N.H. 776, 778, 584 A.2d 775, 776 (1990).

■ It is clear from RSA 38:5 that the voting process described therein does not trigger further action, but is itself part of a process delineated in earlier sections of the statute. RSA 38:5 refers to establishing or acquiring "such a plant," which we read as a reference to the enabling language of RSA 38:3.

■■ Ashland also asserts that because RSA 374:3 (1995) states that the PUC has general supervisory powers over "all public utilities," Ashland, as a municipal utility, is not subject to the jurisdiction of the PUC with regard to activities within town limits. This argument, however, ignores the well-established rule of statutory construction that "[w]hen interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will . . . effectuate the legislative purpose of the statute." *Petition of Public Serv. Co. of N.H.*, 130 N.H. at 282, 539 A.2d at 273 (citation omitted). If it were true that RSA 374:3 precludes the PUC from supervising all of a municipal utility's activities within town limits, then RSA 38:10 could not apply when a town attempts to establish a new municipal utility. Ashland's interpretation of the PUC's role thus clearly contradicts the plain meaning of both RSA 38:3 and RSA 38:10, and is unpersuasive.

Finally, we have reviewed Ashland's remaining arguments, and find that they are without merit and warrant no further discussion. *See, e.g., Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.