763 A.2d 1226

Michael David FREEBURGER

v.

Melvin Anthony BICHELL, et al.

No. 2751, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Dec. 26, 2000.

Joseph T. Mallon, Jr. (Mallon & McCool, LLC on the brief), Baltimore, for appellant.

Patricia M. Thornton (Bacon, Thornton & Palmer, L.L.P. on the brief), Lanham, for appellees.

Argued before BYRNES, ADKINS, and MARVIN H. SMITH (Ret'd, Specially Assigned), JJ.

BYRNES, Judge.

This case presents the question whether the Maryland statute that requires a parent to support his or her destitute adult child, if the parent is financially able to do so, creates an

independent cause of action in favor of the parent against the tortfeasor who caused the adult child's injuries. We hold that it does not.

## FACTS AND PROCEEDINGS

Appellant is Michael David Freeburger, the father of Michael Justin Freeburger ("Michael"). On August 16, 1996, Michael, then eighteen years old, was seriously and permanently injured in an automobile accident. Michael had been riding as a passenger in a car driven by appellee Melvin Anthony Bichell. Mr. Bichell failed to negotiate a turn, and the car left the road and struck a utility pole. The car was owned by appellee James Kerns.

On June 21, 1999, Mr. Freeburger brought suit in the Circuit Court for Baltimore City against Mr. Bichell and Mr. Kerns. He alleged that Michael had sustained personal injuries as a result of the August 16, 1996 accident; that the accident had been caused by the negligence of the appellees; that Michael's injuries had rendered him physically incapacitated and incapable of self-support; that Michael had incurred, and would in the future incur, hospital and medical expenses; that Michael is destitute and cannot pay for his medical expenses; and that Mr. Freeburger is under a statutory duty, pursuant to Md.Code (1999 Repl.Vol.), section 13–102(b) of the Family Law Article ("FL"), to provide Michael with medical treatment and to pay for his medical expenses. Finally, Mr. Freeburger sought recovery of the sums that he is (and will be) under a statutory duty to pay on behalf of Michael because they "were caused directly as a result of [Michael's] aforesaid injuries that were caused directly by the negligence of the [appellees]."

Mr. Bichell never was served. Mr. Kerns was served and filed a "motion to dismiss and/or for summary judgment," in which he recited several facts outside of the complaint, none of which are in dispute. Specifically, Mr. Kerns stated that at the time of the accident, he carried automobile liability insurance with Aetna Life & Casualty Company, with limits of

$50,000 per person and $100,000 per accident, and that claims had been asserted against that policy by Michael and by other passengers who had been riding with Mr. Bichell at the time of the accident. On April 17, 1997, Michael settled his claim for $50,000. A settlement draft was issued by Aetna to Michael and his attorneys. The draft was deposited in the attorneys' escrow account. In addition, as part of the settlement, Michael signed a general release, a copy of which was attached to the motion to dismiss. The general release provides:

> That I, Michael Justin Freeburger, being of lawful age, for the sole consideration of $50,000 to me in hand paid, receipt whereof is hereby acknowledged, have remised, released, and forever discharged, and for my heirs, executors, administrators, and assigns do hereby remise, release, and forever discharge Melvin Bichell, James Kerns and Aetna Life and Casualty Company ... and all other persons, firms, and corporations, of and from any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property, and the consequences thereof, resulting, and to result, from a certain accident which happened on or about the 16 day of August 1996, for which I have claimed the said _____ to be legally liable, which liability is hereby expressly denied.

(Blank space in original.)

In his motion to dismiss and/or for summary judgment, Mr. Kerns argued that the statutory duty of a parent to support his or her destitute adult child, pursuant to FL § 13–102(b), does not create a cause of action in favor of the parent against a third party tortfeasor and, therefore, the complaint did not state a claim for which relief could be granted. He argued, moreover, that even if such a cause of action existed, it was released by Michael.

Mr. Freeburger responded that the duty of support under FL § 13–102(b) that requires him to provide and pay for the

medical care Michael needs to treat his injuries also gives him an independent right of action for medical expenses against the tortfeasors responsible for Michael's injuries. Mr. Freeburger further argued that his cause of action is separate from Michael's cause of action, and, therefore, it was not encompassed in the claims that Michael released.

The circuit court held a hearing on the motion to dismiss and/or for summary judgment. At the conclusion of the hearing, the court stated that it was going to grant the motion. It did not specify whether it was granting a motion to dismiss or for summary judgment. The court then signed an order that provides:

> ORDERED, that Defendant's Motion to Dismiss be and hereby is GRANTED or in the alternative FURTHER ORDERED, that the Defendant's Motion for Summary Judgment be and hereby is GRANTED.

Mr. Freeburger noted a timely appeal.

## STANDARD OF REVIEW

Under Md. Rule 2–322(c), when a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside of the pleadings that are not excluded by the court, it shall be treated as a motion for summary judgment, under Md. Rule 2–501. In the case at bar, Mr. Kerns recited in his motion to dismiss on that ground facts outside the record, and presented as an attachment the release signed by Michael. The circuit court did not exclude these matters. Accordingly, we will treat the court's order as one granting summary judgment.

In deciding whether to grant a motion for summary judgment, the circuit court must determine whether there is a genuine dispute of material fact and, if so, whether the moving party is entitled to judgment as a matter of law. *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 694, 647 A.2d 1297 (1994). In reviewing a decision to grant summary judgment, we engage in the same analysis, and in so

doing determine whether the circuit court was legally correct in its ruling. *Beatty,* 330 Md. at 737, 625 A.2d 1005.

## DISCUSSION

In this Court, the parties advance the same contentions they made below. They agree that there was no genuine dispute of material fact. Mr. Freeburger argues that the circuit court erred in granting summary judgment in favor of Messrs. Bichell and Kerns because 1) under FL § 13–102(b), he is legally obligated to provide and pay for medical care for Michael, who is a "destitute adult child," within the meaning of FL § 13–101(b), and this statutory duty in turn gave rise to a cause of action in his favor, against the appellees; and 2) his right of action against the appellees is separate from Michael's cause of action against them, and, therefore, was not within the scope of the general release of claims given by Michael. The appellees argue to the contrary.

FL § 13–102 is entitled "Prohibited acts; penalties." It provides, at subsection (b):

> *Duty to support destitute adult child.*—If a destitute adult child is in this State and has a parent who has or is able to earn sufficient means, the parent may not neglect or refuse to provide the destitute adult child with food, shelter, care, and clothing.

Under FL § 13–101(b), a "destitute adult child" is "an adult child who: (1) has no means of subsistence; and (2) cannot be self-supporting due to mental or physical infirmity." Subsection (c) of § 13–102 makes a violation of the statute a misdemeanor punishable by a fine not to exceed $1,000 and/or imprisonment not exceeding one year.

The law that now appears at FL § 13–101(b) first was enacted in 1947, as part of the criminal code. Md.Code art. 27, § 105 (1951). It was passed in swift response to the decision in *Borchert v. Borchert,* 185 Md. 586, 45 A.2d 463 (1946), which held, in the context of a child support dispute, that parents are not legally obligated to support their adult disabled children. In *Smith v. Smith,* 227 Md. 355, 176 A.2d

862 (1962), the Court of Appeals relied upon the statute, by then codified at art. 27 § 97, to affirm an award of alimony that included a weekly payment to the ex-wife for support of the parties' physically incapacitated adult child.[1] More than twenty years later, in *Sininger v. Sininger,* 300 Md. 604, 479 A.2d 1354 (1984), the Court held that the statutory duty of support applies regardless of whether the adult child's incapacity predated his attaining the age of minority and that the duty is properly enforceable by circuit courts within their equity jurisdiction over child custody, guardianship, legitimation, maintenance, visitation, and support.[2]

Even before enactment of the statutory provision at issue in this case, the law recognized a duty, also created by statute, on the part of adult children to support their destitute parents. That duty is now codified at FL § 13–102(a), which, in language mirroring FL § 13–102(b), provides that, "[i]f a destitute parent is in this State and has an adult child who has or is able to earn sufficient means, the adult child may not neglect or refuse to provide the destitute parent with food, shelter, care, and clothing." [3]

In *Blucher v. Ekstrom,* 68 Md.App. 459, 513 A.2d 923 (1986), *vacated and remanded on other grounds,* 309 Md. 458, 524

---

1. Section 97 provided:

    Failure of parent to support destitute adult child.

    Any person who has an adult child destitute of means and unable to support himself by reason of mental or physical infirmity, who is possessed of or able to earn means sufficient to provide such child with necessary shelter, food, care and clothing and who neglects or refuses so to do, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both.

2. When *Sininger* was decided, the jurisdiction of the equity court over such matters was set forth in Md.Code (1984 Repl.Vol.), section 3–602(a) of the Courts and Judicial Proceedings Article. That statute was repealed effective October 1, 1984, by Acts 1984, ch. 296, § 1, and was recodified at FL § 1–201.

3. A "destitute parent" is one who "has no means of subsistence" and "cannot be self-supporting, due to old age or mental or physical infirmity." FL § 13–101(c).

A.2d 1235 (1987), this Court addressed the question whether an adult child's statutory duty to support his destitute parent "creates a concomitant cause of action entitling the adult child to recover compensation from the party who injured the adult child's parent." *Id.* at 460, 513 A.2d 923. In that case, an adult daughter and her mother were injured in an automobile accident caused by two tortfeasors. The mother sustained serious personal injuries that left her medically disabled and required around-the-clock medical care. It so happened that the adult daughter was employed as a nurse. When the mother was discharged from the hospital, the adult daughter began to provide her with constant nursing care, which neither of them otherwise could afford. Eventually, the adult daughter left employment to care for her mother full time, and suffered a total loss of income.

The adult daughter sued the tortfeasors to recover damages for her own personal injuries, on theories of negligence and negligent entrustment, and, in a separate count, to recover the wages she had lost when she left employment to care for her mother. She alleged that she had been forced by the tortfeasors' wrongdoing to leave employment because, under § 13–102(a), she was required to provide for her mother's care, and she could only do so by caring for her mother herself. The trial court dismissed the latter claim without leave to amend, for failure to state a cause of action.

On appeal, this Court rejected the adult daughter's argument that the duty imposed by FL § 13–102(a) gave rise to a cause of action in favor of an adult child against the tortfeasor whose conduct caused the destitute parent's disability. We stated:

The purpose of [FL § 13–102(a) ] is not to create a cause of action on behalf of adult children of a disabled parent but, insofar as possible, to remove destitute parents from public support and to place responsibility for their upkeep on their adult children. The criminal sanctions imposed by the legislature are a recognition of the fact that not all adult children will voluntarily support their destitute parent or parents. In order to encourage compliance with the legal

requirement of support, the General Assembly has enacted a penal provision for noncompliance.

68 Md.App. at 464, 513 A.2d 923. We emphasized that an intent to change the common law is not to be inferred from enactment of legislation except "by clear and unambiguous language." *Id.* at 465, 513 A.2d 923 (quoting *Lutz v. State,* 167 Md. 12, 15, 172 A. 354 (1934)). We also pointed out that, with the exception of statutes that expressly confer upon certain people the right to sue for damages for injury or death to another, a cause of action in tort ordinarily is personal to the party who was injured. We concluded:

> At common law, an adult child acting on his or her own behalf was not permitted to maintain an action in tort against the party who allegedly injured the child's parent. The Legislature does not sanction such a suit. The statute carries no hidden meaning. It does exactly what it purports to do, that is, require an adult child to support a destitute parent, if the child has the ability to do so. What the act does not do is create a new tort.

68 Md.App. at 466, 513 A.2d 923.

The Court of Appeals granted *certiorari* in *Blucher* to address the question "[w]hether the duty of an adult child to support and care for a destitute parent creates a concomitant cause of action entitling the adult child providing support and care to recover damages from the party who injured the parent, which injuries resulted in the parent becoming destitute?" *Blucher v. Ekstrom,* 309 Md. 458, 459, 524 A.2d 1235 (1987). The Court did not reach that question, however, because it concluded that no order of appeal had been filed from the final judgment dismissing the count in which the adult daughter had sought recovery of her lost wages. On that basis, the Court vacated this Court's judgment and remanded the case to this Court with directions to dismiss the appeal.

In *Pepper v. Johns Hopkins Hospital,* 111 Md.App. 49, 680 A.2d 532 (1996), *aff'd,* 346 Md. 679, 697 A.2d 1358 (1997), we had occasion to discuss FL § 13–102(b). In that case, a minor

child sustained serious, permanent injuries as a result of medical negligence by a hospital. His parents sued the hospital on the child's behalf and in their own right, for recovery of the child's past, present, and future medical expenses. The circuit court dismissed the parents' claims because they were time-barred. At trial, the hospital moved *in limine* to preclude the child from introducing evidence of his medical expenses, on the ground that the parents were responsible for those expenses during the child's minority, under the doctrine of necessaries, and the parents would become responsible for the child's post-majority expenses, under FL § 13–102(b). The child's lawyer proffered that the evidence would show that the child's past, present, and future medical expenses were and would be substantial, and that while the parents had some assets, including a house, their assets and incomes could not meet the medical expenses necessary for the child's care. The circuit court granted the motion in limine. A defense verdict was returned, and, on appeal, the child contested, *inter alia,* the ruling on the motion.

This Court held that the circuit court's ruling was in error. We explained that, under *Garay v. Overholtzer,* 332 Md. 339, 631 A.2d 429 (1993), a negligently injured child may pursue a claim for medical expenses in his own name if, *inter alia,* his parents are unable to meet those expenses. We concluded that the child adequately had proffered to the trial court evidence of his parents' inability to pay his medical expenses. We also rejected the hospital's argument that the child was not entitled to recover future, post-majority medical expenses when it was likely that he would become a destitute adult child within the meaning of FL § 13–102(b). We explained that an adult child is primarily responsible for his or her own medical expenses, but that, under FL § 13–102(b), his parents have a "contingent responsibility" for the adult child's medical expenses if the conditions set forth in the statute are met. *Pepper,* 111 Md.App. at 70–71, 680 A.2d 532.

■ We now turn to the issue in the case at bar, and draw upon the case law addressing FL §§ 13–102(a) and (b). The language of FL § 13–102(b) makes plain that a duty arises on

the part of a parent to provide an adult child with food, shelter, care, and clothing if and only if (1) the adult child has no means of subsistence and cannot be self-supporting due to physical or mental infirmity; *and* (2) the parent has the means or is able to earn sufficient means to provide the support. *Cf. Hale v. State*, 44 Md.App. 376, 378, 408 A.2d 772 (1979) (stating that the statute imposing criminal liability for failure to support a destitute parent requires the fact-finder to find beyond a reasonable doubt that the children were able to support the parent).

In this case, Mr. Freeburger did not allege or offer any proof that he presently has the means or is able to earn sufficient means to provide for Michael's medical care. Because that condition must exist to trigger the legal duty of support under § 13–102(b), it is clear that on the facts put forward by Mr. Freeburger no such duty existed. For that reason alone, entry of summary judgment was proper.

Even if Mr. Freeburger had alleged or presented proof that he presently has the means or is able to earn the means sufficient to pay for Michael's medical expenses, the statute in question does not create a cause of action that would entitle him to recover those expenses from the appellees, as the tortfeasors who caused Michael's injuries. Moreover, the expenses in question clearly were within the ambit of Michael's release of claims.

A parent has no common law right of action against one who tortiously injures the parent's adult child. Although FL § 13–102(b) imposes a duty of support on financially able parents of a destitute adult child, it is devoid of language clearly and unambiguously creating a cause of action against the tortfeasor whose wrongdoing caused the adult child's disability. By way of contrast, an action for wrongful death, which did not exist at common law, was expressly created by enactment of the Wrongful Death Statute. *See* Md.Code (1998 Repl.Vol.), § 3–902 of the Courts and Judicial Proceedings Article ("CJ") ("An action may be maintained against a person whose wrongful act causes the death of another."). The Wrongful Death Statute specifies, at CJ § 3–904, the

people who may benefit from such an action. Until recently, a parent could not bring an action for the death of a married adult child, and could only bring such an action for the death of an unmarried adult child in limited circumstances. *See* former CJ § 3–904(e) (1995). In 1997, the Wrongful Death Statute was amended to more broadly permit recovery by parents for the death of adult children, and recovery by adult children for the death of a parent. CJ § 3–904(e).

While FL § 13–102(b) provides for criminal liability against a parent who, having the means to do so, fails to support a destitute adult child, it does not go beyond that to alter the common law by creating a separate and concomitant cause of action in the parent of the adult child. As we see it, the primary purpose of FL § 13–102(b) is the same as the primary purpose of FL § 13–102(a), as recognized by this Court in *Blucher:* to remove from public support destitute and disabled people whose relatives are financially able to support them. *Blucher,* 68 Md.App. at 464, 513 A.2d 923. *See also Lasley v. Georgetown Univ.,* 842 F.Supp. 593 (D.D.C.1994).

Mr. Freeburger maintains that *Smith v. Smith, supra,* 227 Md. 355, 176 A.2d 862, supports his position. He emphasizes that in that case, the Court observed that the statutory predecessor to FL §. 13–102(b) was "a clear indication of legislative intent to place failure to support an incapacitated [adult] child on equal footing with failure to support a minor child." *Id.* at 360, 176 A.2d 862. *Smith* did not involve the issue of liability to third parties, however. It dealt only with a *parent's duty* to support his or her destitute adult child. To be sure, when the parent is financially able, FL § 13–102(b) imposes such a duty of support, and the duty is on a par with the parental duty to support a minor child. It does not logically follow from the existence of that duty, however, that a parent who is obligated by statute to support his or her destitute adult child has a corresponding right of action against the tortfeasor responsible for the adult child's injuries. Indeed, such an interpretation would be an unwarranted extension of the law that is beyond the legislative scope and purpose of FL § 13–102(b).

Mr. Freeburger also argues that *Johns Hopkins Hospital v. Pepper, supra,* 346 Md. 679, 697 A.2d 1358, supports his argument. We disagree. In *Pepper,* the Court of Appeals affirmed this Court and held that the duty imposed by FL § 13–102(b) does not preclude a minor child from recovering future medical expenses in his own name. In the case *sub judice,* by contrast, Michael was an adult child when the accident in which he was injured occurred. He had a cause of action against the appellees as the tortfeasors responsible for his injuries, and he asserted claims against them on that basis. He then voluntarily entered into a settlement of those claims, in which he released his cause of action. In an ideal world, the appellees would have had sufficient assets, whether in the form of insurance coverage or otherwise, to compensate Michael for, *inter alia,* the cost of his past, present, and future medical expenses. The fact that their assets were limited, however, means only that this case is like the many others in which injured people settle their claims for a compromised sum. It does not mean that a cause of action arose in favor of Michael's father for the same medical expenses that Michael had sought to recover.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**