Smith v. Stilphen                    CV-04-101-JD  11/17/04  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Rhonda Smith and Mark Smith

     v.                              Civil No. 04-101-JD
                                     Opinion No. 2004 DNH 162
Janet G. Stilphen

                              O R D E R


     Janet G. Stilphen has moved to dismiss the complaint of

Rhonda and Mark Smith to the extent they seek to recover the

earnings lost while caring for their son, Matthew, since he

received permanent injuries in a collision between his bicycle

and Stilphen's van.  Stilphen argues that, because Matthew was

nineteen years old at the time he became disabled, his parents no

longer had any duty to care for him and therefore have no right

to recover any resulting lost income.  The Smiths object.


                             Background

     The following facts are drawn from the Smiths' first amended

complaint.  On August 21, 2002, Stilphen's van collided with

Matthew's bicycle while both were traveling northward on Route 10

in Swanzey, New Hampshire.  Matthew, nineteen at the time,

sustained a traumatic brain injury in the collision and became

permanently disabled as a result.  His parents were subsequently

appointed as the guardians of his estate.

Acting in that capacity, as well as on their own behalf, the Smiths filed a negligence action against Stilphen in this court, invoking its diversity jurisdiction.[1]  The complaint alleges that the Smiths "have been required to care for their catastrophically injured son, causing them to lose time from their gainful employment and incur other expenses and losses," including medical bills for Matthew's injuries.  They seek to recover those damages, in addition to "future economic losses attributable to the permanent inability of Matthew . . . to care for himself."

## Standard of Review

Together with her motion to dismiss the Smiths' claim for lost earnings pursuant to Fed. R. Civ. P. 12(b)(6), Stilphen filed an answer to the first amended complaint.  The court must therefore treat the motion to dismiss as a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c).  In evaluating this kind of motion, a "court must accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in [its] favor."  Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998).  Judgment on the pleadings is not appropriate "'unless it appears beyond doubt that the plaintiff

---

[1]The Smiths reside in New Hampshire, while Stilphen resides in Connecticut.

2

can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" <u>Santiago de Castro v. Morales Medina</u>, 943 F.2d 129, 130 (1st Cir. 1991) (quoting <u>Rivera-Gomez v. De Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988) (further internal citations omitted)).

Discussion

Stilphen seeks to dismiss the Smiths' claim for the time they were unable to work due to caring for Matthew. She does not, however, seek to dismiss their claims for the medical bills and related expenses they allege to have incurred.[2] Stilphen contends that "parents should not be able to recover loss of income allegedly attributable to time taken from employment in order to care for disabled adult offspring where, as here, the disability arises only after the child has reached the age of majority." Although she acknowledges that New Hampshire has allowed parents to recover their extraordinary expenses in caring for an adult child born with a disability through a wrongful birth action, <u>Smith v. Cote</u>, 128 N.H. 231, 245 (1986), Stilphen argues that <u>Smith</u> does not control here because Matthew did not

---

[2]It is unclear from the Smiths' complaint whether they claim to have incurred these expenses in their individual capacities or on Matthew's account as his guardians.

become disabled until after reaching adulthood. As a result, she asserts, the Smiths have no responsibility to support him and therefore no right to recover their expenses in that regard. Finally, Stilphen argues that even if the Smiths have a duty to care for Matthew under New Hampshire law, that duty arises from a statute which provides them no right of action against her.

The Smiths read <u>Smith</u> as recognizing a parent's responsibility to care for his or her disabled children regardless of whether the disability struck after the age of majority. They argue that the existence of this responsibility provides the corresponding right to recover the parent's costs of care against the party who tortiously caused the disability.

As a federal tribunal exercising diversity jurisdiction over the Smiths' state law claims, this court must predict the New Hampshire Supreme Court's future course on this issue. See <u>FDIC v. Ogden Corp.</u>, 202 F.3d 454, 460-61 (1st Cir. 2000). This task requires "'an informed prophecy of what the [New Hampshire Supreme Court] would do in the same situation,' seeking 'guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law.'" <u>Walton v. Nalco Chem. Co.</u>, 272 F.3d 13, 20 (1st Cir. 2001) (quoting <u>Blinzler v. Marriott Int'l, Inc.</u>, 81 F.3d 1148, 1151 (1st Cir.

4

1996)).  It also demands "considerable caution" and respect for the "'well-marked boundaries'" of New Hampshire law.  <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 192 (1st Cir. 1996) (quoting <u>Andrade v. Jamestown Hous. Auth.</u>, 82 F.3d 1179, 1187 (1st Cir. 1996)).

In <u>Smith</u>, the New Hampshire Supreme Court recognized wrongful birth as a source of civil liability under state law.[3] 128 N.H. at 242.  The court then sought to elucidate how the recoverable damages differ from those available under ordinary tort principles.  128 N.H. at 244.  To that end, the court adopted the "extraordinary costs rule," which entitles the parents in a wrongful birth suit to recover only those expenses traceable to their child's abnormal condition, excluding ordinary child-rearing costs.  <u>Id.</u>

In explaining the rule, the court stated that

> parents may recover extraordinary costs incurred both before and after their child attains majority.  Some courts do not permit recovery of post-majority expenses, on the theory that the parents' obligation of support terminates when the child reaches twenty-one. <u>E.g.</u>, <u>Bani-Esraili v. Wald</u>, 485 N.Y.S.2d 708 ([N.Y.] Sup. Ct. 1985).  In New Hampshire, however, parents are required to support their disabled adult offspring.

---

[3]"A wrongful birth claim is a claim brought by the parents of a child born with severe defects against a physician who negligently fails to inform them, in a timely fashion, of an increased possibility that the mother will give birth to such a child, thereby precluding an informed decision as to whether to have the child."  <u>Smith</u>, 128 N.H. at 236.

5

Id. at 245 (internal parallel citation omitted). Through this language, the court differentiated New Hampshire law from that of other states which have limited recovery for wrongful birth to those additional costs incurred in caring for the child before he or she becomes an adult, because at that point parental responsibility ceases under the law of the jurisdiction. Cf. Arche v. Dep't of Army, 798 P.2d 477, 486 (Kan. 1990) (concluding "a parent is no longer required by law to provide support for an adult incompetent child" in Kansas and that recovery for wrongful birth therefore limited to care given before age of majority); Bani-Esraili, 485 N.Y.S.2d at 709 (relying on New York statute terminating parental duty at twenty-one as barring claim for wrongful birth damages beyond that age), aff'd sub nom. Bani-Esraili v. Lerman, 503 N.Y.S.2d 273 (N.Y. App. Div. 1986), aff'd, 505 N.E.2d 947 (N.Y. 1987). Because Smith read New Hampshire law to require support for disabled adult children, however, the court included the parents' expenses in that regard among the categories of damages recoverable in a wrongful birth action.

Thus, Stilphen's argument that Smith "in no way addresses under what circumstances a parent may claim damages for injury suffered by an emancipated offspring who was born with no infirmity" (emphasis added) is too broad. The court agrees with Stilphen that the court in Smith did not directly deal with

6

whether parents have the responsibility to care for their children who become disabled after reaching adulthood, because in the case of a wrongful birth the child is by definition disabled before he or she reaches that age. Nevertheless, the logic of Smith--that the parents' right to recover the costs of caring for their injured child should be co-extensive with their duty to cover those expenses--has force outside of the wrongful birth context. See Martell v. Boardwalk Enters., Inc., 748 F.2d 740, 755 (2d Cir. 1984) (recognizing parental right to recover costs of caring for tortiously injured child as "coextensive with the duration of [parent's] obligation of support").

As authority for the proposition that "parents are required to care for their disabled adult offspring," the Smith court cited two of its earlier decisions, two decisions of out-of-state courts, a New Hampshire statute, and a New Hampshire practice guide. None of the decisions appears to have dealt with the case of a son or daughter who becomes disabled only after reaching adulthood. Campbell v. Cooper, 34 N.H. 49 (1856), in fact, suggests that parental responsibility for a child ends when he or she turns twenty-one unless "by reason of continued helplessness, arising from physical or mental infirmity, the [child's] emancipation does not then take place, and the burden of support continues . . . ." Id. at 62-63 (emphases added); see also Town

7

of Orford v. Town of Rumney, 3 N.H. 331, 332 (1825) ("children who, from want of understanding, are incapable of taking care of themselves, do not become emancipated at the age of twenty-one, if they continue under the control of their father"); Blake v. Cruz, 698 P.2d 315, 321 (Idaho 1984) ("parental duty of support . . may continue when, because of physical or mental infirmity, the child is unable to provide for his support . . ."); James G. v. Caserta, 332 S.E.2d 872, 882 (W. Va. 1985) (same). To the extent the Smith court relied on these cases for its holding that parents have a responsibility to care for their disabled adult children, then, the holding appears to extend only to children who become disabled before becoming adults and therefore does not support the Smiths' claim for lost earnings in this action.

The court in Smith also referenced New Hampshire Revised Statutes Annotated ("RSA") § 546-A:2, which arguably obligates a parent to care for a son or daughter who becomes disabled only after reaching adulthood. Section 546-A:2 states that

> Every person whose income or other resources are more than sufficient to provide for his or her reasonable subsistence compatible with decency or health owes a duty to support or contribute to the support of his or her wife, husband, child, father or mother when in need.

Elsewhere, the statute defines "child" simply as "either a natural or adopted child or a stepchild." Id. 546-A:1, IV.

8

Stilphen urges this court to read the term "child" according to its "plain and ordinary meaning," which in her view would exclude any person who has already reached the age of majority.

The court need not resolve this question of statutory interpretation, however, because courts have uniformly held that statutes which obligate parents to care for their disabled adult children create no right of action in the parents to recover their expenses in doing so from the party who tortiously caused the disability.  See Lasley v. Georgetown Univ., 842 F. Supp. 593, 595-96 (D.D.C. 1994); Savona v. Gen. Motors Corp., 640 F. Supp. 6, 11 (D. Conn. 1985); Freeburger v. Bichell, 763 A.2d 1226, 1232 (Md. Ct. Spec. App. 2000); Anderson v. Cincinnati Ins. Co., 1987 WL 11033, at *3 (Ohio Ct. App. May 15, 1987) (unreported decision); 2 Jacob A. Stein, Stein on Personal Injury Damages § 12:15 (3d ed. 2003).  In their objection, the Smiths do not address this theory, which Stilphen raises in her brief through a discussion of Freeburger.[4]  The court therefore concludes that the New Hampshire Supreme Court would follow these

_____

[4]Stilphen also cites St. Joseph Hosp. of Nashua v. Rizzo, 141 N.H. 9 (1996), where the New Hampshire Supreme Court held that "third party creditors such as the [plaintiff] hospital do not have standing to sue to enforce the support obligations created under RSA 546:A-2."  Id. at 12.  Here, the Smiths do not occupy the position of "third party creditors," but rather that of a support obligor under the statute.  The court therefore does not consider St. Joseph Hosp. instructive.

9

authorities in determining that, even if RSA 546-A:2 requires the Smiths to care for Matthew following his injury, it does not enable them to recover their consequential damages here.[5]

The Smiths do, however, suggest that their right to recover the earnings they lost in caring for Matthew proceeds from the New Hampshire common law, specifically the case of Connell v. Putnam, 58 N.H. 534 (1879). The plaintiff in Connell recovered "the fair value of his own time while engaged in nursing and taking care of his son" following injuries he sustained from the kick of the defendant's horse. 58 N.H. at 534. The New Hampshire Supreme Court upheld the verdict, reasoning that "[i]f the plaintiff left his work and devoted his time and attention to the care of his injured son, no reason is apparent why the jury may not consider that as one item of the expense, as if the services had been performed by some one else and paid for by the plaintiff." Id. at 535.

Although this language appears to support the Smiths'

---

[5]The subsequent edition of the practice guide cited in Smith states in relevant part that "RSA chapter 546-A is used mainly to secure support for adult children who may be wards of the state, retarded, and so on." 3 Charles G. Douglas, III & Caroline G. Douglas, New Hampshire Practice: Family Law § 16.22, at 528 (2d ed. 1991). Accordingly, while the practice guide supports the view that parents must support their disabled adult offspring, it in no way suggests that this statutory duty allows the parents to recover their resultant costs from responsible third parties.

10

position, a prior decision in the same case strongly suggests that the plaintiff's son in Connell was a minor at the time of his injury. See 58 N.H. 335 (referring to the son as a "boy"). Furthermore, none of the New Hampshire Supreme Court's subsequent citations to Connell has applied its rule in the case of a child injured after reaching adulthood. See Smith, 128 N.H. at 245; Seavey v. Dennett, 69 N.H. 479 (1899); accord Ernshaw v. Roberge, 86 N.H. 451 (1934). The court therefore agrees with Stilphen that Connell simply recognizes a parent's right to recover his or her expenses in caring for a tortiously injured minor child. Cf. Woodman v. Peck, 90 N.H. 292, 293-94 (1939) (holding that parents could recover costs of traveling to visit minor child during hospitalization necessitated by defendant's conduct).

The court concludes that the New Hampshire Supreme Court would not allow parents to recover earnings they have lost in caring for a child who becomes disabled after reaching the age of majority. This is consistent with the approach taken in a number of other jurisdictions. See, e.g., Counts v. Hospitality Employees, Inc., 518 N.W.2d 358, 360 & n.2 (Iowa 1994); Norman v. Mass. Bay Transp. Auth., 529 N.E.2d 139, 142 (Mass. 1988); Higgins v. J.C. Penney Cas. Ins. Co., 388 N.W.2d 429, 431 (Minn. Ct. App. 1986); Dunphy v. J & I Sports Enters., Inc., 748 N.Y.S.2d 595, 598 (N.Y. App. Div. 2002); Kotlar v. House, 566

11

N.E.2d 701, 703 (Ohio Ct. App. 1989); Restatement (Second) of Torts § 703 & cmt. f (1977). Accordingly, Stilphen's motion to dismiss the Smiths' damage claim for earnings lost as a result of caring for Matthew following his injury is granted.

## Conclusion

For the foregoing reasons, Stilphen's motion to dismiss (document no. 7) is GRANTED.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 17, 2004

cc:  John P. Fagan, Esquire
     Francis G. Murphy Jr., Esquire