Department of Safety
No. 98-161

APPEAL OF THE STATE OF NEW HAMPSHIRE

(New Hampshire Department of Safety)

July 26, 1999

86

*Philip T. McLaughlin*, attorney general (*Mary Schwarzer* and *N. William Delker*, attorneys, on the brief and orally), for the petitioner.

*Stephen T. Jeffco, P.A.*, of Portsmouth (*Stephen T. Jeffco* and *Harry N. Starbranch, Jr.* on the brief, and *Mr. Starbranch* orally), for the respondent.

JOHNSON, J. The State of New Hampshire appeals a decision of the department of safety dismissing the State's petition for an administrative license suspension against the respondent, Daniel B. Mackenzie, because the police officer's report was not properly sworn. We reverse and remand.

On December 6, 1997, Officer Mark Carignan of the Dover Police Department stopped the respondent for operating a motor vehicle while under the influence of alcohol. The respondent refused to submit to any blood, breath, urine, or physical test, which led to a license suspension effective in thirty days. *See* RSA 265:91-a (1993 & Supp. 1998). On December 7, Carignan completed paperwork indicating that the respondent failed to submit to a blood, breath, urine, or physical test; initiated the license suspension process; and had the documents notarized. The documents in relevant part stated: "I . . . hereby swear that I requested a test pursuant to RSA 265:84 and that Daniel B. Mackenzie [r]efused to submit to testing." The oathtaker signed the documents, indicating that the documents were "sworn to before me this 7[th] day of Dec[ember], 1997." The respondent requested an administrative hearing before the bureau of hearings. *See* RSA 265:91-b (1993 & Supp. 1998).

On January 23, 1998, the respondent appeared for his hearing before the bureau of hearings. The respondent questioned Officer Carignan on the process used to create the sworn report. Carignan testified that he appeared in front of an oathtaker, who was either a notary public, *see* RSA 455:3 (Supp. 1998), or a justice of the peace, *see* RSA 455-A:3 (1992), raised his right hand and swore to the contents of his report, and signed it in the presence of the oathtaker. The oathtaker then signed the report. Carignan testified that he did not recall the oathtaker asking him any questions or taking any affirmative act other than signing the report.

The hearings examiner found that the officer "did swear or affirm in manner though[t] to be binding by said Officer," but concluded that the officer did not provide a properly sworn report because the oathtaker did not administer the oath. The hearings examiner concluded:

> In order for the report to be "sworn" within the meaning of the law, the affiant must appear before a person qualified to administer an oath, an oath must be administered and the affiant must swear or affirm in a manner which is deemed to be binding.

The hearings examiner dismissed the petition because the report was not properly sworn, and therefore the bureau lacked jurisdiction. The State's motion to reconsider was denied, and the State appeals.

On appeal, the State argues that the hearings examiner erred in concluding that the bureau did not have jurisdiction over the administrative license suspension because the police officer's report, which contained attestations of an oathtaker that the officer appeared and swore to the report, did not constitute a "sworn report" within the meaning of RSA 265:91-a.

As a preliminary matter, we address the defendant's contention that the State's appeal under RSA chapter 541 (1997) is improper. The bureau of hearings in the department of safety is governed by RSA 21-P:13, II (1988), which provides in part:

> The bureau of hearings shall have authority to take disciplinary action in the name of such division against any holder of such license, permit or registration in accordance with law. Unless otherwise provided by law, all rehearings and appeals shall be held in accordance with RSA 541.

Conforming to the statutory directive, we look to the relevant provisions of the administrative license suspension (ALS) statute, see RSA chs. 263, 265 (1993 & Supp. 1998), to identify any alternate procedures "otherwise provided by law."

The statute establishing the bureau of hearings describes an adversarial proceeding in which the bureau of hearings may proceed "in the name of such division *against* any holder of such license, permit or registration." RSA 21-P:13, II (emphasis added). The statute implicitly identifies the State acting through the division as a participant in these hearings. Although the statutes include several provisions providing for appeals from ALS decisions, these provisions address only appeals by aggrieved drivers whose suspen-

sions were upheld. *See* RSA 263:75, I ("If the suspension is sustained after a hearing"), :76 (1993) ("Any person whose license has been suspended or revoked"); RSA 265:91-b, I(a) ("Any person whose license is suspended or revoked").

While RSA 265:91-d, which provides that "[a]ny person aggrieved by a decision of the department under this section after the administrative review or hearing, may appeal the decision as provided in RSA 263:75," appears to provide the State with an appeals mechanism, that option is illusory. RSA 263:75 expressly limits appeals under that provision to situations where the suspension was *sustained* after hearing, and does not address situations where the State appeals because the suspension was not sustained. Our review fails to identify any provision specifically providing for an appeal by the State under this procedural posture.

■ Given that the General Court expressly provided that all appeals are governed by RSA chapter 541 "[u]nless otherwise provided by law," RSA 21-P:13, II, and clearly provided for appeals by aggrieved license holders, *see* RSA 263:75, I, :76; RSA 265:91-b, I(a), :91-d, we conclude, in light of RSA 21-P:13, II, that the lack of any specific provision addressing State appeals evinces an intent by the General Court for appeals by the State to be governed by RSA chapter 541.

Having concluded that the State's appeal was properly brought under RSA chapter 541, we turn to the substantive issue on appeal. We will not vacate or reverse an agency order or decision "except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (1997).

RSA 265:91-a provides in relevant part: "If any person refuses a test . . . the law enforcement officer shall submit a sworn report to the department." The relevant statutory provision addressing creation of a sworn statement provides: "No other ceremony shall be necessary in swearing than holding up the right hand, but any other form or ceremony may be used which the person to whom the oath is administered professes to believe more binding upon the conscience." RSA 516:19 (1997).

■ The hearings examiner concluded that the officer's report was not properly sworn because the oathtaker did not affirmatively administer an oath. Although a sworn document requires the affiant to swear to the truth of the document under oath, an oath may be administered without any affirmative act by an oathtaker. *See State v. Thibodeau*, 101 N.H. 136, 138, 135 A.2d 715, 716 (1957). An

oathtaker can administer an oath by "direct[ing] *or* caus[ing]" an affiant's oath to be taken. BLACK'S LAW DICTIONARY 44 (6th ed. 1990) (emphasis added). An oath is properly administered within the meaning of RSA 516:19 when the affiant knows that his statement is sworn and given under oath in the presence of an oathtaker. "[T]he purpose of the oath is to ensure that the affiant consciously recognizes his legal obligation to tell the truth." *State v. Sands*, 123 N.H. 570, 605, 467 A.2d 202, 224 (1983). The hearings officer found that the officer "did swear or affirm in manner though[t] to be binding by said Officer," which we hold is sufficient to satisfy the prerequisites for a sworn statement, and sufficient to satisfy any jurisdictional prerequisites.

*Reversed and remanded.*

All concurred.