Hillsborough-northern judicial district
No. 2008-434

## James Kerouac

v.

## Director, N.H. Division of Motor Vehicles

Submitted: November 19, 2008
Opinion Issued: February 18, 2009

*Richard C. Mooney*, of Concord, by brief, for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Nancy J. Smith*, senior assistant attorney general, on the memorandum of law), for the defendant.

DALIANIS, J. The plaintiff, James Kerouac, appeals the order of the Superior Court (*Abramson*, J.) upholding the suspension of his driver's license by the defendant, the Director of the New Hampshire Division of Motor Vehicles (DMV). We affirm.

The record supports the following facts. On June 23, 2007, Chief Steven Campbell of the Bennington Police Department arrested the plaintiff for driving while intoxicated. Chief Campbell asked the plaintiff to submit to breathalyzer and blood alcohol tests and told him that his refusal would result in the suspension of his driver's license. Chief Campbell gave the plaintiff an administrative license suspension (ALS) form and explained his rights should he refuse to submit to testing. The plaintiff read the form, but did not make a decision as to whether he would submit to testing. He did not check the boxes on the form that would have indicated that he accepted or refused testing or sign his name under these boxes.

After thirty minutes, Chief Campbell deemed the plaintiff to have refused testing. Chief Campbell checked a box indicating that the plaintiff had refused to sign his name as described above and then Chief Campbell signed his name underneath the checked box. In section II of the form, he checked a box that indicated that the plaintiff had failed to submit to testing. In section V of the form, titled "Officer's Report," Chief Campbell listed his name as the officer who swore that he requested the plaintiff to submit to testing and checked the box indicating that the plaintiff had refused testing. Chief Campbell neglected, however, to sign this part of the form, although there was a place for his signature. A justice of the peace signed the bottom of the form, indicating that on June 23, 2007, Chief Campbell personally appeared before the justice of the peace and swore to the statements on the form.

The plaintiff's license was suspended because he was deemed to have refused testing. He requested an administrative hearing to challenge this, asserting that the New Hampshire Department of Safety (department) lacked jurisdiction over the matter because Chief Campbell had failed to sign section V of the form. A hearing was held and, sixteen days later, the

hearings examiner recommended that the suspension be upheld. Thereafter, the plaintiff requested review by the defendant, contending that the department also lacked jurisdiction because the hearings officer failed to issue his report within the fifteen calendar days specified in the department's rules. The defendant upheld the hearings officer's decision. The plaintiff then appealed to the superior court and asked the court to issue rulings upon his jurisdictional challenges. The trial court ruled that the department had jurisdiction, and this appeal followed.

We will uphold the superior court's decision on appeal unless the evidence does not support it or it is legally erroneous. *Proulx v. Dir., N.H. Div. of Motor Vehicles*, 154 N.H. 350, 352 (2006). For its part, the superior court must treat the hearings officer's findings of fact on questions properly before him as *prima facie* lawful and reasonable. *Id.* at 351; RSA 263:75, II (2004). The superior court may not set aside or vacate the decision appealed from unless it "is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 263:76 (2004). In an appeal to the superior court from an ALS decision, the plaintiff has the burden to show that the order was clearly unreasonable or unlawful. *Proulx*, 154 N.H. at 351.

The plaintiff first argues that the department lacked jurisdiction because Chief Campbell failed to sign section V of the ALS form. He contends that RSA 265-A:30 (Supp. 2008) requires receipt of a "sworn report" of a law enforcement officer before the department may suspend a driver's license, and that without the officer's signature, section V of the ALS form is not a "sworn report."

The interpretation of a statute is a question of law, which we review *de novo*. *N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 713 (2007). We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Id.* We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.*

RSA 265-A:30 provides, in pertinent part:

> I. If any person refuses a test as provided in RSA 265-A:14 or submits to a test described in RSA 265-A:4 which discloses an alcohol concentration of 0.08 or more or, in the case of a person under the age of 21 at the time of the violation, 0.02 or more, the law enforcement officer shall submit a sworn report to the department. In the report the officer shall certify that the test was requested pursuant to RSA 265-A:4 and that the person refused to submit to testing or submitted to a test which disclosed an

alcohol concentration of 0.08 or more, or, in the case of a person under the age of 21, 0.02 or more.

II. Upon receipt of the sworn report of a law enforcement officer submitted under paragraph I, the department shall suspend the person's driver's license or privilege to drive . . . .

Because the parties do not argue otherwise, we assume, without deciding, that a "sworn report" is a jurisdictional prerequisite to an appeal of an ALS suspension. Pursuant to the plain meaning of RSA 265-A:30, however, we conclude that a "sworn report" need not be signed.

■ The plain meaning of the phrase "sworn report" is a report to which an officer swears. To swear in this context means "to utter or take solemnly (an oath)" or "to solemnly declare or assert as true : affirm with an oath." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2308 (unabridged ed. 2002). The plain language of this provision does not require a report to be signed in order to be a "sworn report."

■ Further, the statutory provision addressing creation of a sworn statement, RSA 516:19 (2007), also does not require that such a statement be signed. *See Appeal of State of N.H.*, 144 N.H. 85, 88 (1999). RSA 516:19 provides: "No other ceremony shall be necessary in swearing than holding up the right hand, but any other form or ceremony may be used which the person to whom the oath is administered professes to believe more binding upon the conscience." To constitute a sworn statement under RSA 516:19, "the affiant [must] swear to the truth of the document under oath," *Appeal of State of N.H.*, 144 N.H. at 88, but need not sign it.

■ Therefore, we conclude that to constitute a "sworn report" under RSA 265-A:30, the officer need not sign section V of the ALS form. Assuming that a sworn report was required to vest the department with jurisdiction, in this case, Officer Campbell's failure to sign this part of the form did not deprive the department of jurisdiction to decide the plaintiff's appeal.

The plaintiff's reliance upon RSA 456-B:2, II (Supp. 2008) is misplaced. RSA 456-B:2 (Supp. 2008) is part of the Uniform Law on Notarial Acts. *See* RSA ch. 456-B (Supp. 2008). RSA 456-B:1 defines a notarial act as "any act that a notary public is authorized to perform," including "taking an acknowledgement, administering an oath or affirmation, taking a verification upon oath or affirmation, witnessing or attesting a signature, certifying or attesting a copy, and noting a protest of a negotiable instrument." "Verification upon oath or affirmation" is defined as "a declaration that a statement is true made by a person upon oath or affirmation." RSA 456-B:1, III. RSA 456-B:2, II requires that in taking a verification upon oath or

affirmation, the notarial officer "must determine . . . that the person appearing before the officer and making the verification is the person whose true signature is on the statement verified."

█ We assume, without deciding, that RSA 456-B:2, II applies. Even so, we conclude that the ALS form here satisfies the requirements of RSA 456-B:2, II. Although Chief Campbell failed to sign section V of the form, he signed another section of the form. With this signature, the justice of the peace before whom Chief Campbell appeared and swore to the statements in the ALS form was able to verify that Chief Campbell was the person whose true signature appeared on the form, thus meeting the requirements of RSA 456-B:2, II.

The plaintiff next asserts that the hearings officer's failure to issue his report within the fifteen days required by RSA 265-A:31 (Supp. 2008) divested the department of jurisdiction. We disagree.

█ RSA 265-A:31 provides, in pertinent part: "[T]he hearing examiner shall issue his or her recommendation on the order of suspension or revocation within 15 days of the request for administrative review or the hearing date." The use of the word "shall" is generally regarded as a command and usually indicates the legislature's intent that the statute is mandatory. *See McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005).

█ The statute, however, is silent as to how this mandate is to be enforced. Under such circumstances, we must determine the proper mode of enforcement. *Id.* Where the legislature, out of liberty interest concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period. *Id.* On the other hand, where the legislature has prescribed time limits out of a general interest in hastening adjudicative dispositions for the benefit of all parties involved, we have been unwilling to treat the time limit as jurisdictional. *Appeal of Martino*, 138 N.H. 612, 616 (1994). Further, where the legislature has failed to provide a method of enforcing a statutory mandate, we have looked to whether the party seeking relief has shown prejudice. *Id.*

█ Here, the plaintiff concedes that the purpose of the mandatory period is to "hasten the adjudicative process." Although he argues that "[t]he delay certainly prejudiced" him, the only prejudice to which he points is the suspension of his license. We hold that under the circumstances of this case, the hearings officer's failure by one day to issue his decision within the time limit enacted by the legislature did not deprive the department of jurisdiction over the plaintiff's appeal.

For all of the above reasons, therefore, we affirm the superior court's decision to uphold the department's suspension of the plaintiff's license.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.