NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2021-0014

DIANNA RUDDER

v.

DIRECTOR, NEW HAMPSHIRE DIVISION OF MOTOR VEHICLES

Argued: September 28, 2021
Opinion Issued: March 16, 2022

DesMeules Olmstead & Ostler, of Norwich, Vermont (Cabot Teachout on the brief and orally), for the petitioner.

John M. Formella, attorney general (Emily C. Goering, assistant attorney general, on the memorandum of law and orally), for the Director, Division of Motor Vehicles.

BASSETT, J. The petitioner, Dianna Rudder, appeals an order of the Superior Court (Bornstein, J.) upholding the administrative suspension of her driver's license by the New Hampshire Division of Motor Vehicles (DMV). See RSA 265-A:30, :34 (2014). The petitioner's license was suspended, and that suspension was upheld, on the grounds that she was "in actual physical control of a vehicle upon the ways of this state" while intoxicated. RSA 265-A:31, II(a) (2014); see also RSA 265-A:30, :34. She argues that the trial court

should have overturned the suspension of her license because the hearing examiner erred when he applied the definition of "way" contained in RSA 259:125, II (2014). We agree with the petitioner and reverse.

The following facts are supported by the record or are not in dispute. On April 19, 2020, the petitioner was sitting in her vehicle, which was parked with the engine running in a private church parking lot in Enfield. A police officer observed the petitioner exit the vehicle, retrieve a bottle of alcohol from the trunk, and return to the driver's seat. The officer approached the petitioner, who informed him that she was sober when she arrived at the church and that, before leaving, she intended to wait until she was sober or call for a ride. The officer administered a field sobriety test, which the petitioner failed. The officer arrested the petitioner for driving under the influence. The officer then asked the petitioner to take a breath test, and informed her that refusing to submit to the test or testing above the legal limit for blood alcohol concentration specified in RSA 265-A:30 would result in suspension of her license. See RSA 265-A:8 (Supp. 2020). The petitioner submitted to the breath test, which showed her blood alcohol content exceeded the legal limit. The officer confiscated the petitioner's license and issued a temporary driving permit. See RSA 265-A:30, III.

The officer submitted a sworn report to the Department of Safety certifying the results of the breath test. On April 22, 2020, the department notified the petitioner that her license would be suspended for six months, effective May 19, 2020. See RSA 265-A:30, I-II. Administrative license suspension, or "ALS," is a remedial process that may proceed independently of, and precede, criminal charges for driving under the influence of drugs or liquor (DUI). See RSA 265-A:30; State v. Cassady, 140 N.H. 46, 49-50 (1995). Any person whose license has been suspended under RSA 265-A:30 may request either an administrative review or a hearing to review the suspension. RSA 265-A:31 (2014). On May 8, 2020, the petitioner challenged the suspension of her license and requested a hearing.

The hearing was held on July 16, 2020. The petitioner stipulated that the arresting officer had reasonable grounds to believe she was intoxicated. However, the petitioner argued that the officer did not have reasonable grounds to believe that the petitioner was in control of a vehicle "upon the ways of this state." RSA 265-A:31, II(a). She argued that the church parking lot where she was arrested is not a "way" within the meaning of RSA 259:125. RSA 259:125 provides that "way" shall mean:

> I. Except as provided in paragraph II, the entire width between the boundary lines of any public highway, street, avenue, road, alley, park or parkway, or any private way laid out under authority of statute, or any such way provided and maintained by a public institution to which state funds are appropriated for public use, or any such way which has been

2

used for public travel thereon, other than to and from a toll bridge or ferry, for 20 years, or any public or private parking lot which is maintained primarily for the benefit of paying customers;

  II. For the purposes of RSA 265:71, IV, RSA 265:79, RSA 265-A:2, I, and RSA 265-A:3, any public highway, street, avenue, road, alley, park, parking lot or parkway; any private way laid out under authority of statute; ways provided and maintained by public institutions to which state funds are appropriated for public use; any privately owned and maintained way open for public use; and any private parking lots, including parking lots and other out-of-door areas of commercial establishments which are generally maintained for the benefit of the public.

RSA 259:125, I-II. The petitioner argued that the church parking lot where she was arrested does not meet the definition in paragraph I because it is private, not laid out with the use of public funds, nor maintained for the benefit of a commercial establishment. The petitioner also argued that the definition in paragraph II does not apply in ALS hearings held pursuant to RSA 265-A:31, because the ALS statute, RSA 265-A:30, is not one of the four statutes listed in paragraph II.

The hearing examiner upheld the license suspension, concluding that the State met its burden of showing that the officer had reasonable grounds to believe the petitioner was on a "way" at the time of her arrest. In so ruling, the hearing examiner applied the definition of "way" found in paragraph II of RSA 259:125. The hearing examiner ruled that, despite the fact that RSA 265-A:30 is not included among the statutes listed in paragraph II, ALS "is intertwined with, and closely related to, and in fact, is based on an arrest for [DUI]." The hearing examiner therefore decided that, because paragraph II applies to DUI, it "may reasonably be inferred to apply" to an ALS hearing. Additionally, the hearing examiner cited State v. Lathrop, 164 N.H. 468 (2012), for the proposition that "any roadway that allows public access, even if a private road, unless access is blocked by a bar or a gate, is a public way."

The petitioner appealed to the superior court. See RSA 265-A:34, II. She argued that, because RSA 265-A:30 is not one of the four statutes listed in paragraph II of RSA 259:125, it was error for the hearing examiner to apply that definition in an ALS hearing held pursuant to RSA 265-A:31. The court upheld the hearing examiner's decision, observing that "[t]here is evidence in the record to support the hearing examiner's finding that the area in which the petitioner's vehicle was located at the time of her arrest under RSA 265-A:2, I[,] was a 'way' within the meaning of RSA 259:125, II." This appeal followed. On appeal, the parties address only the issue of whether it was proper for the trial court to uphold the hearing examiner's decision to apply the definition of "way" set forth in RSA 259:125, II.

3

In an appeal of a license suspension to the superior court, the petitioner has the burden to show that the hearing examiner's order was clearly unreasonable or unlawful. Kerouac v. Dir., N.H. Div. of Motor Vehicles, 158 N.H. 353, 355 (2009); RSA 265-A:34, III. The trial court is required to treat the hearing examiner's findings of fact on questions properly before the examiner as prima facie lawful and reasonable, and may not set aside or vacate the decision unless the court is satisfied, by a clear preponderance of the evidence before it, that the decision is unjust or unreasonable. Kerouac, 158 N.H. at 355; RSA 265-A:34, III. We will uphold the trial court's decision on appeal unless the evidence does not support it or it is legally erroneous. Kerouac, 158 N.H. at 355.

The petitioner argues that "[t]he plain language of the statute and rules of statutory construction are clear" that paragraph II of RSA 259:125 does not apply in ALS hearings held pursuant to RSA 265-A:31. She maintains that the legislature "specifically and intentionally restricted" application of paragraph II to four statutes, and that RSA 265-A:31 is not one of them. The State counters that the petitioner's interpretation of RSA 259:125 "defies the purpose of the statutory scheme, is contrary to the intent of the legislature, and produces an absurd result." We agree with the petitioner.

The petitioner's argument raises an issue of statutory interpretation, which presents a question of law subject to our de novo review. See Rogers v. Rogers, 171 N.H. 738, 743 (2019). In matters of statutory interpretation, our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. Lathrop, 164 N.H. at 469. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Rogers, 171 N.H. at 743. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. When the language of a statute is unambiguous, we do not look beyond it for further indications of legislative intent. Id.

In Lathrop, we explained that the application of the definition of "way" set forth in RSA 259:125, II "is specifically limited to four statutes." Lathrop, 164 N.H. at 471. Two of the four statutes listed in paragraph II concern DUI: RSA 265-A:2, I (2014) and RSA 265-A:3 (Supp. 2020). None pertains to ALS. See RSA 259:125, II. The State nonetheless contends that ALS and DUI are "so intertwined" and "inextricably connected as part of a statutory scheme" that because paragraph II applies to DUI, it "must be imported to apply to ALS." However, the State premises its argument on the mistaken notion that the ALS and DUI statutory schemes are coextensive. Far from being so inextricably connected that we should ignore the plain language of RSA 259:125, as we

have observed, DUI and ALS "are intended to operate independently." Cassady, 140 N.H. at 49-50. Although the same events may give rise to both DUI charges and ALS, the State may press DUI charges even if a driver's license is not suspended, see, e.g., id. at 47-50, and the ALS statutory scheme contemplates that a person's license may be suspended even if they are not convicted of DUI, see RSA 265-A:32 (2014) (prescribing the length of license suspension "[w]here a license . . . has been suspended under RSA 265-A:30 and the person is also convicted on criminal charges").

The language of paragraph II, by its express terms, applies to only the four listed statutes. See St. Joseph Hosp. of Nashua v. Rizzo, 141 N.H. 9, 11-12 (1996) (explaining the familiar axiom of statutory construction expressio unius est exclusio alterius, which means that "the expression of one thing in a statute implies the exclusion of another" (quotation omitted)). Because the language of RSA 259:125, II is plain and unambiguous, and because we will not add language that the legislature did not see fit to include, see Petition of Carrier, 165 N.H. 719, 721 (2013), we hold that the trial court erred when it construed paragraph II to apply to ALS proceedings under RSA 265:A-31. Therefore, it erred when it applied paragraph II in upholding the petitioner's license suspension.

Nonetheless, the State asserts that an interpretation based solely upon the plain language of RSA 259:125, II produces an absurd result. Because the statute is clear on its face, we will look beyond the language of the statute only if a plain reading would compel an absurd result. State v. Maxfield, 167 N.H. 677, 681 (2015). Here, we are not persuaded that an absurd result follows from a plain reading of RSA 259:125, II.

The State advances three specific arguments in support of its assertion that absurd results would follow from a plain reading of RSA 259:125, II. First, the State argues that applying the plain language of paragraph II produces absurdity by creating "special locations where someone could be convicted of DUI, but free from the parallel ALS." The State contends that it would be absurd for the statute to impose lesser penalties on DUI offenders who choose to "drunk driv[e] in the right location." We disagree.

We have held that a literal reading of a statute leads to absurd results when it makes untenable distinctions between persons who are identically situated. For example, in State v. Breest, 167 N.H. 210, 213-14 (2014), we interpreted a statute that provides relief for defendants who have obtained a favorable post-conviction DNA test result, and found a literal interpretation of the statute absurd because it would offer relief to defendants who obtained the test through court order, but not those defendants who obtained the test with the State's consent. Likewise, in State v. Gallagher, 157 N.H. 421, 423 (2008), we held that the literal interpretation of a DUI sentencing statute would lead to "disproportionate results among people who have committed the same

5

offenses." Absent a plausible explanation for such an outcome, we held that a literal reading of the statute would lead to an absurd result. Id. at 423-24.

Here, a literal interpretation of RSA 259:125 results in the identical treatment of identically situated people, and disparate treatment of differently situated people. As written, there is almost complete overlap between the locations covered by the two definitions. Only two types of ways are included in paragraph II but not paragraph I: ways that are privately owned and maintained, while open for public use, see Lathrop, 164 N.H. at 470; and public and private parking lots not maintained for commercial use. RSA 259:125, II. Indeed, in light of their physical location, intoxicated individuals controlling vehicles on these two types of ways are not engaged in the same conduct as those controlling vehicles on other types of ways. In contrast with the statutory distinctions addressed in Gallagher and Breest, the distinction between individuals based on where they control their vehicles, which is a function of RSA 259:125, is tenable. The legislature made the choice to apply the more expansive definition of "way" in paragraph II to only four specific statutes, and it did not include the ALS hearing statute, RSA 265-A:31. RSA 259:125, II. The legislature may have decided that it was undesirable or unnecessary to apply the expedited ALS process to individuals controlling vehicles in a few locations where, arguably, there is less danger to the public. The dissent concludes that it would have been absurd for the legislature to limit the application of paragraph II to only four statutes; we, however, are not so quick to discredit that decision: "The wisdom, effectiveness, and . . . desirability of a statute is not for us to decide. Nor may we substitute our judgment for that of the legislature." Appeal of Town of Lincoln, 172 N.H. 244, 253 (2019) (quotation omitted).

We also reject the State's second absurdity argument. The State argues that limiting the application of paragraph II to the four enumerated statutes would lead to an absurd result because the examiner at an ALS hearing would apply a different definition of "way" than the arresting officer. The State asserts that, because an officer applies paragraph II for the purposes of arresting someone for DUI, it would be absurd for the examiner at an ALS hearing to not apply paragraph II when evaluating whether the officer had reasonable grounds to impose ALS. This argument again relies on the false premise that DUI charges and ALS are coextensive. It also assumes that officers in the field will be unable to apply the correct definition of "way" when deciding whether to arrest someone for driving while intoxicated, suspend their license, or both. When determining whether to suspend a driver's license, officers apply only the definition of "way" set forth in paragraph I — the paragraph that a hearing examiner must apply when reviewing the license suspension. Even if, as the State posits, an officer in the field were to mistakenly apply paragraph II rather than paragraph I in regard to an administrative license suspension, the error could be rectified during the ALS hearing process.

6

Nor are we persuaded by the State's third absurdity argument. The State raises the specter that limiting the application of paragraph II to the listed statutes would undermine the DUI statutory scheme. The State directs our attention to a number of DUI statutes that include the word "way" but are not listed in paragraph II, such as RSA 265-A:4, :11, and :21, arguing that, if we limit the application of paragraph II to only the four listed statutes, the enforcement of these other DUI laws will be hindered. The State asks us to disregard the plain language of RSA 259:125, II based merely on the speculative impact that our construction might have on certain DUI statutes. As in Lathrop, we decline to alter our interpretation of RSA 259:125, II based on "hypothetical effect[s] on other areas of the law." Lathrop, 164 N.H. at 471. Because we are not persuaded that a literal interpretation would produce absurd results, we decline the State's invitation to consider the statute's legislative history. See Maxfield, 167 N.H. at 682.

For the foregoing reasons, we conclude that the trial court and the hearing examiner erred as a matter of law by applying the definition of "way" set forth in RSA 259:125, II to an ALS proceeding under RSA 265:A-31. Of course, if the legislature disagrees with our interpretation of RSA 259:125, II, then "it is free, subject to constitutional limitations, to amend the statute." See State v. Dor, 165 N.H. 198, 203, 205-06 (2013).

Having determined that the hearing examiner erred by applying the definition of "way" contained in paragraph II, we can uphold the suspension of the petitioner's license only if the church parking lot comes within the definition of "way" set forth in paragraph I. Neither the hearing examiner's report nor the trial court order addressed whether the church parking lot is a "way" under the paragraph I definition. Therefore, we ordinarily would remand this issue for determination in the first instance. Simpson v. Young, 153 N.H. 471, 474 (2006). "However, when a lower tribunal has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law." Id. Here, the parties agree that the church parking lot where the petitioner was arrested is private, was not laid out at the direction of the State, is maintained by a private institution without state funds, and serves a non-commercial establishment that does not have paying customers. These facts are sufficient for us to determine that, as a matter of law, the church parking lot does not meet the definition of "way" within paragraph I. See RSA 259:125, I.

Reversed.

HICKS and DONOVAN, JJ., concurred; HANTZ MARCONI, J., dissented.

HANTZ MARCONI, J., dissenting. I conclude that the "ways of this state" upon which a driver has given implied consent pursuant to RSA 265-A:4 (Supp. 2021) are coextensive with the "ways" upon which the driver can be

7

arrested for DUI pursuant to RSA 265-A:2, I (2014) — i.e., all ways included within the expanded definition of "way" set forth in RSA 259:125, II (2014). It follows that "the ways of this state" in RSA 265-A:31 (2014), the administrative license suspension review statute, must also be coextensive with the "ways" upon which the driver can be arrested for DUI. Accordingly, I respectfully dissent.

The majority observes that RSA 265-A:31 is not one of the four statutes listed in RSA 259:125, II, and concludes that the legislature thereby intended that the expanded definition of "way" in paragraph II not apply to administrative license suspension (ALS) proceedings. By construing RSA 259:125, II in isolation, and by failing to consider RSA 259:1 (2014), the majority errs.

Paragraph II provides that "for the purposes of" four statutes, the expanded definition of "way" shall apply. The listed statutes all prohibit certain conduct. In particular, RSA 265-A:2, I, prohibits driving or attempting to drive upon any way while under the influence of drugs or liquor. The "purposes" of those four statutes include deterring persons from committing the conduct prohibited thereby. Thus, by its own terms, RSA 259:125, II should apply when doing so furthers, inter alia, "the purposes of" RSA 265-A:2, I — the prohibition of driving or attempted driving by persons under the influence of drugs or liquor.

One means by which the legislature has attempted to prevent such conduct is through the Implied Consent Law, RSA 265-A:4, and the related administrative license suspension procedures. The Implied Consent Law provides, in relevant part:

> Any person who . . . drives or attempts to drive a vehicle upon the ways of this state . . . shall be deemed to have given consent to physical tests and examinations for the purpose of determining whether such person is under the influence of intoxicating liquor or controlled drugs, . . . if arrested for any offense arising out of acts alleged to have been committed while the person was . . . driving, attempting to drive, or in actual physical control of a vehicle . . . while under the influence of intoxicating liquor or controlled drugs, prescription drugs, over-the-counter drugs, . . . which impair a person's ability to drive or while having an alcohol concentration in excess of the statutory limits contained in RSA 265-A:2 or RSA 265-A:3.

RSA 265-A:4 (emphasis added). As we have explained, "the purpose of the statute is to prevent operation of cars by persons under the influence of intoxicating liquor." State v. Mfataneza, 172 N.H. 166, 169 (2019) (quotation omitted); see State v. Cassady, 140 N.H. 46, 49 (1995) ("The primary goal of the administrative license suspension process is to remove irresponsible drivers

8

from the State's highways as quickly as possible to protect the public."). "The major premise of the implied consent law is that it will aid the prosecution of the guilty and the protection of the innocent." Mfataneza, 172 N.H. at 169 (brackets and quotation omitted).

The Implied Consent Law applies to persons who drive on the "ways of this state." Because RSA 259:125, II does not include RSA 265-A:4 in its list of statutes, it follows from the majority's analysis that the majority believes that the expanded definition of "way" in paragraph II does not apply to the Implied Consent Law, and, therefore, intoxicated drivers driving in areas such as the church parking lot in this case are not deemed to have consented to testing when arrested for DUI. I disagree. As specifically stated in RSA 265-A:4, one purpose of the Implied Consent Law is to determine if a driver, driving or attempting to drive upon the "ways of this state," is under the influence of liquor "while having an alcohol concentration in excess of the statutory limits contained in RSA 265-A:2 or RSA 265-A:3." In other words, one reason for the tests to which drivers are deemed to have given implied consent is to determine whether the driver has violated RSA 265-A:2 or :3. Since we must read statutes together, I conclude that the term "ways," as used in RSA 265-A:4, means the same as the term "way" in RSA 265-A:2 and :3 — that is, the term "ways" in RSA 265-A:4 includes every way upon which it is an offense to drive while intoxicated. Thus, the term "ways" in RSA 265-A:4 means the same as the expanded definition of "way" in RSA 259:125, II. See RSA 21:3 (2020).

RSA 265-A:30 (2014) provides, in relevant part:

I. If any person . . . submits to a test described in RSA 265-A:4 which discloses an alcohol concentration of 0.08 or more . . . , the law enforcement officer shall submit a sworn report to the department. In the report the officer shall certify that the test was requested pursuant to RSA 265-A:4 and that the person . . . submitted to a test which disclosed an alcohol concentration of 0.08 or more . . . .

II. Upon receipt of the sworn report of a law enforcement officer submitted under paragraph I, the department shall suspend the person's driver's license or privilege to drive . . . .

(Emphasis added.) Because the petitioner submitted to a test described in RSA 265-A:4 that disclosed an alcohol concentration of 0.08 or more, the department was required under RSA 265-A:30 to suspend the petitioner's license. Then, pursuant to RSA 265-A:31, which establishes the ALS review process, the scope of the administrative review or hearing is limited to the issues of:

(a) Whether the officer had reasonable grounds to believe the arrested person had been driving, attempting to drive, or was in actual physical

9

control of a vehicle <u>upon the ways of this state</u> . . . while under the influence of intoxicating liquor, narcotics, or drugs;

(b) The facts upon which the reasonable grounds to believe such are based;

(c) Whether the person had been arrested;

(d) Whether the person has refused to submit to the test upon the request of the law enforcement officer or whether a properly administered test or tests disclosed an alcohol concentration of 0.08 or more . . . ;

(e) Whether the officer informed the arrested person of his or her right to have a similar test or tests conducted by a person of his or her own choosing; and

(f) Whether the officer informed the arrested person of the fact that refusal to permit the test would result in suspension of his or her license or driving privilege and that testing above the alcohol concentration level specified in RSA 265-A:2 or RSA 265-A:3 would also result in suspension.

RSA 265-A:31, II (emphasis added).

I conclude that the term "ways" in this statute must also be construed as referring to the expanded definition of "way" in RSA 259:125, II, because the term "ways" is here being used "for the purposes of" RSA 265-A:2 or :3. The Implied Consent Law and the testing procedure thereunder are intended to determine whether RSA 265-A:2 or :3 has been violated, to deter operating under the influence, to promptly remove irresponsible drivers from the State's highways, and to aid in prosecuting the guilty while protecting the innocent. See Mfataneza, 172 N.H. at 169; Cassady, 140 N.H. at 49. Since the term "ways" in the Implied Consent Law includes the church parking lot at issue in this case, the same term in the statute providing for administrative review of the license suspension must have the same meaning. It would be anomalous if a test properly requested pursuant to RSA 265-A:4, resulting in a license suspension pursuant to RSA 265-A:30, were to result in the license being reinstated on appeal because the definition of "ways" in the appeal statute is narrower than the definition of "ways" in RSA 265-A:4.

Although I conclude that the majority misconstrues RSA 259:125, II, itself, I believe it errs more fundamentally by failing to focus upon the primary issue before us — what is the meaning of "ways" <u>as used in RSA 265-A:31</u>. The majority construes RSA 259:125, II. But that does not end the analysis. The legislature has mandated that when the term "way" is used anywhere in Title XXI, including in RSA 265-A:31, it shall have the meaning ascribed to it by

10

RSA 259:125 "except where the context otherwise requires."  RSA 259:1 (emphasis added).  Yet, the majority fails to consider whether the context of the Implied Consent Law and the ALS statutes requires that the term "ways" in those statutes include every way upon which a driver is prohibited by RSA 265-A:2, I, from driving while intoxicated.

I believe that the context does require that construction.  For example, the majority's construction of RSA 259:125, II creates an internal inconsistency in the Implied Consent Law.  The relevant language of RSA 265-A:4 is:

> Any person who . . . drives . . . upon the ways of this state . . . shall be deemed to have given consent to physical tests and examinations for the purpose of determining whether such person is under the influence of intoxicating liquor . . .  if arrested for any offense arising out of acts alleged to have been committed while the person was . . . driving, attempting to drive, or in actual physical control of a vehicle . . . while under the influence of intoxicating liquor . . . which impair a person's ability to drive or while having an alcohol concentration in excess of the statutory limits contained in RSA 265-A:2 or RSA 265-A:3.

(Emphases added.)  This statute provides that any person who drives on a way is deemed to have given consent to tests to determine whether that person is under the influence if arrested for any offense arising out of acts committed while driving under the influence.  This implied consent is not limited to arrests for just those offenses that occur on "ways" as defined in RSA 259:125, I.  Nor does the statute deem consent to have been given only after a person is arrested on the appropriate "way" — it provides that consent is deemed to have been given by any person who drives on the state's ways if arrested for any offense, which includes arrests on ways as defined in RSA 259:125, II.

Thus, if "ways of the state" in RSA 265-A:4 refers only to ways as defined in RSA 259:125, I, then implied consent is a fleeting construct depending on where the driver is arrested.  As long as a driver is driving on a "paragraph I" way, the driver has consented to tests should the driver be arrested for any offense, which includes offenses arising out of driving on a "paragraph II" way.  But as soon as the driver actually drives on a "paragraph II" way, the driver's implied consent vanishes — should he be arrested for driving there, he no longer has given implied consent to testing.  It is absurd to construe the statute as providing that a driver consents to testing generally by exercising his privilege to drive on the ways of the state except when arrested for DUI on certain of those ways.  Rather, the context of RSA 265-A:4 requires that the "ways of the state" upon which a driver has given implied consent be coextensive with "the ways of the state" upon which the driver can be arrested for DUI.  It follows, therefore, that pursuant to RSA 259:1, the term "ways" in RSA 265-A:4 means "way" as defined in RSA 259:125, II.

11

Similarly, as discussed above, since the term "ways" in the Implied Consent Law includes any "way" upon which a driver can be arrested for DUI, it follows that the same term in RSA 265-A:31, which is the statute providing for administrative review of any license suspension resulting from the Implied Consent Law test, must have the same meaning.

Finally, I believe the majority's construction leads to absurd results. The majority agrees that a literal reading of a statute leads to absurd results when it makes untenable distinctions between persons who are identically situated. My colleagues acknowledge that there are two types of "ways" that fall under RSA 259:125, II, but not under RSA 259:125, I — (1) ways that are privately owned and maintained, while open for public use; and (2) public and private parking lots not maintained for commercial use. They maintain, however, that "in light of their physical location, intoxicated individuals controlling vehicles on these two types of ways are not engaged in the same conduct as those controlling vehicles on other types of ways." I disagree. Driving while intoxicated in a parking lot, for example, constitutes the same conduct and creates the same danger to both the driver and the public, regardless of whether the parking lot is maintained for commercial use. Significantly, such noncommercial lots and private ways are physically connected to RSA 259:125, I, ways.

Next, the majority contends that the "legislature may have decided that it was undesirable or unnecessary to apply the expedited ALS process to individuals controlling vehicles in a few locations where, arguably, there is less danger to the public." Again, I disagree.

That the legislature decreed that driving under the influence on "paragraph II" ways is a crime — the same crime as driving under the influence on "paragraph I" ways — demonstrates that the legislature was equally concerned with protecting the safety of the public (as well as that of the intoxicated driver) whether the driving took place on paragraph I or paragraph II ways. "Public safety requires that [DUI] statutes apply to any property to which the public has access." State v. Lathrop, 164 N.H. 468, 470 (2012) (emphasis added). The Implied Consent Law and the ALS process are tools for promptly removing irresponsible drivers from the ways of this State, aiding in prosecuting the guilty, and protecting the innocent. They come into play after the driver has been arrested. The ALS process is "designed to afford due process, to be informal, and to provide a prompt determination of whether there are grounds to suspend a driver's license." Cassady, 140 N.H. at 49.

Thus, the question is what plausible reason the legislature could have for deciding that the tools for promptly removing irresponsible drivers from the ways of this State, affording arrested persons due process, and more accurately distinguishing the guilty from the innocent, should be available after a driver is arrested for DUI on a "paragraph I" way, but not after a driver is arrested for

12

the same crime on a "paragraph II" way.  To ask the question is to answer it.  Having determined that driving under the influence on a paragraph II way is the same crime as doing so on a paragraph I way, the legislature would have no plausible reason for excluding drivers arrested on "paragraph II" ways from application of the Implied Consent Law and the ALS process.  See Mfataneza, 172 N.H. at 169; Cassady, 140 N.H. at 49 (primary goal of ALS process is to remove irresponsible drivers from highways "as quickly as possible to protect the public").

The legislature has, in the past, sought to close various "loopholes" and "get tough on [DUI]" by making changes to the DUI law.  See Lathrop, 164 N.H. at 470.  In light of the majority's opinion, the legislature may wish to clarify its intent that the expanded definition of "way" in RSA 259:125, II should apply to the Implied Consent Law and the ALS process.  Because I would affirm the superior court order upholding the suspension of the petitioner's license, I respectfully dissent.

13